444 So.2d 1058 (1984)
Harold R. PAPE, II, Appellant,
v.
Janet M. PAPE, Now Janet M. Lockwood, Appellee.
No. AP-402.
District Court of Appeal of Florida, First District.
January 24, 1984.
Rehearing Denied March 1, 1984.
*1059 G. Frank Godfrey of Wood, Godfrey, Carlin & Atter, Jacksonville, for appellant.
Daniel O. Palmer, Orange Park, for appellee.
Before ERVIN, C.J., and MILLS, BOOTH, SMITH, SHIVERS, WENTWORTH, JOANOS, THOMPSON, WIGGINTON, NIMMONS and ZEHMER, JJ.

EN BANC OPINION
JOANOS, Judge.
Harold R. Pape (Rick) appeals a modification of his and Janet Pape's (Janet) final judgment of dissolution granting custody of his minor child (Belinda), now nine years old, to Randall Lockwood (Randall), Janet's husband, Belinda's stepfather.
Rick's and Janet's marriage was dissolved in January, 1977, with Janet awarded custody of Belinda, then three years of age, and Rick ordered to pay child support. In July, 1979, Janet and Randall were married and Belinda resided with them in Jacksonville, Florida. Janet was killed in an automobile accident in October, 1981. Belinda has resided in Randall's home since Janet's death, along with another minor child born to Janet and Randall in April, 1980. Randall's present wife, whom he married in May, 1982, also now resides in the home. After Janet's death, Rick, then married and living in California, petitioned for modification of the final decree to gain custody of Belinda as her natural father. Following Randall's petition for an investigation and social study, the trial court ordered such an investigation to be conducted by the Department of Health and Rehabilitative Services (HRS). HRS filed a report citing the loving relationship and excellent care provided in Randall's home and the suitable home and stable environment that Rick, his present wife and three children (her two sons by a previous marriage and one daughter of Rick's and hers) could provide in California. HRS concluded that custody of Belinda should be returned to her legal and biological father, Rick. After a hearing, which was neither recorded nor *1060 reduced to a statement of evidence, the trial court denied Rick's petition for custody, awarded custody to Randall and ordered Rick to pay child support, citing that it would not be in Belinda's best interest to place custody with her natural father.
As pointed out in the recent opinion of In Re The Guardianship of D.A. McW., 429 So.2d 699 (Fla. 4th DCA 1983), in the usual custody case between two parents, where both are fit and have equal rights to custody, the "best interest of the child" test controls, but in a contest between a parent and someone else, natural parental rights, as well as the child's welfare, must be considered. Citing, State ex rel. Sparks v. Reeves, 97 So.2d 18 (Fla. 1957), the Fourth District Court of Appeal found that a "parent's natural right to custody must give way only when the child's welfare requires it or the parent is in some way disabled." D.A. McW., at 702. See also, Johnson v. Johnson, 434 So.2d 972 (Fla. 5th DCA 1983).
The Supreme Court of the United States has stated that its decisions "... have by now made plain beyond the need for multiple citation that a parent's desire for and right to `the companionship, care, custody, and management of his or her children' is an important interest that `undeniably warrants deference and, absent a powerful countervailing interest, protection'" Lassiter v. Department of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981) quoting Stanley v. Illinois, 405 U.S. 645, at 651, 92 S.Ct. 1208, at 1212, 31 L.Ed.2d 551 (1972).
Generally, in the absence of a finding of abandonment, or that the natural parents are unfit, strangers, even grandparents, may not be awarded permanent custody of children, where the natural parents have not relinquished their rights. Besade v. Besade, 312 So.2d 484 (Fla. 3rd DCA 1975). Although the circumstances of particular cases such as in Gorman v. Gorman, 400 So.2d 75 (Fla. 5th DCA 1981), and Scott v. Singleton 378 So.2d 885 (Fla. 1st DCA 1979), may well justify an award of custody to a non-parent, the mere fact of temporary physical possession by a stepparent does not in itself furnish grounds for permanent deprivation of parental custody. See, In Interest of H., 320 So.2d 868 (Fla. 4th DCA 1975); State ex rel Sparks v. Reeves, 97 So.2d 18 (Fla. 1957); and Wray v. Williams, 352 So.2d 152 (Fla. 2nd DCA 1977). Parents have a natural and a legal right to the custody of their children, and, other things being equal, the court should award custody to a natural parent rather than one who is not a parent. 25 Fla.Jr.2d, Family Law, § 525. Award of custody to the father, where the mother had died, although the child was closer to its maternal grandparents  through circumstances mostly not of the father's making  was held not error in Wise v. Brewster, 179 So.2d 882 (Fla. 1st DCA 1965). This court has held that in the absence of evidence disclosing that the best interests of children warranted the "drastic remedy" of depriving their natural father of the right to rear his children in his home, the trial court erred in awarding custody of minor children, whose mother had died, to their maternal grandmother. Behn v. Timmons, 345 So.2d 388 (Fla. 1st DCA 1977). Given a parent's natural right to custody, fellowship and companionship of his offspring, Rick should not have been denied custody of his daughter, absent a determination that he is unfit or unqualified to have custody or that the welfare of the child requires denial of the father's claim on that basis and provision for another custody arrangement.
We note apparent conflict in our decision with our prior opinion in Scott v. Singleton, 378 So.2d 885 (Fla. 1st DCA 1979) and for that reason have considered this case pursuant to the en banc provisions of Florida Rule of Appellate Procedure 9.331. We distinguish Scott on the facts of the two cases. Scott involved the granting of the minor children's custody to the maternal grandmother who had raised the children for the most part over five years in her home. Here, there is no blood relation and Belinda had lived with her stepfather for three years when Janet met her untimely *1061 death. To the extent that the rationale of Scott may conflict with this opinion, we recede from Scott.
We note our awareness of appellee's position that without a trial transcript or proper substitute we cannot resolve the underlying factual issues in this case "... so as to conclude that the trial court's judgment is not supported by the evidence or by an alternate theory." Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla. 1979). That is a principle of law with which we are familiar and which controls the appellate process. See Starks v. Starks, 423 So.2d 452 (Fla. 1st DCA 1982). However, the error that occurred in the proceeding below was not in the factual context of the case but in the "... misconception by the trial judge of a controlling principle of law... ." Applegate, supra, at 1152. Thus, it is within our scope of authority to review the matter and finding error send it back to the trial court for the application of the correct principle of law.
Accordingly, the trial court's grant of custody to Randall is REVERSED and this cause is REMANDED for the entry of a new order after the trial court's consideration of the evidence in light of the rule announced in this opinion.
BOOTH, SMITH, WENTWORTH, THOMPSON, WIGGINTON, NIMMONS and ZEHMER, JJ., concur.
SHIVERS, J., dissents in separate opinion and ERVIN, C.J., concurs in SHIVERS dissent.
MILLS, J., dissents in separate opinion.
SHIVERS, Judge, dissenting.
I respectfully dissent.
After the hearing, the trial court in its modification order rested its decision on both the evidence and the HRS report in determining that it would not be in the best interest of the minor child to place her in the custody of her father at this time:
... and the court having considered the evidence, together with the report of the Department of Health and Rehabilitative Services... .
The trial court further found that the child is receiving very good care in the home of her stepfather and is responding positively to the love and attention provided her.
This court was furnished no transcript of the hearing. We do not have the benefit of knowing what evidence the trial court considered in making its decision.
In Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979), the appellate court was furnished no transcript. The Supreme Court, speaking through Justice Adkins, clearly stated:
In appellate proceedings the decision of a trial court has the presumption of correctness and the burden is on the appellant to demonstrate error. The Applegates correctly point to the lack of a trial transcript or a proper substitute as fatally flawing the appellate court's ruling. The written final judgment by the trial court could well be wrong in its reasoning, but the decision of the trial court is primarily what matters, not the reasoning used.
Justice Adkins, in the Applegate decision, wrote that without a transcript the appellate court cannot conclude that the trial court's judgment is not supported by the evidence or by an alternative theory. The court decided that the case should have been affirmed because the record brought forth by the appellant was not adequate to demonstrate reversible error:
The trial court's imposition of a constructive trust could well be supported by evidence adduced at trial but not stated in the judge's order or otherwise apparent in the incomplete record on appeal. The question raised by Barnett Bank clearly involves underlying issues of fact. When there are issues of fact the appellant necessarily asks the reviewing court to draw conclusions about the evidence. Without a record of the trial proceedings, the appellate court can not properly resolve the underlying factual issues so as to conclude that the trial court's judgment is not supported by the *1062 evidence or by an alternative theory. Without knowing the factual context, neither can an appellate court reasonably conclude that the trial judge so misconceived the law as to require reversal. The trial court should have been affirmed because the record brought forward by the appellant is inadequate to demonstrate reversible error.
In Starks v. Starks, 423 So.2d 452 (Fla. 1st DCA 1982), our court concluded that without a transcript we have no way of knowing how the trial court arrived at its decision. Starks at 453. We held in Starks that appellant has the burden of demonstrating error from the record which he must supply. Without a complete record we followed Applegate and the trial court. In the case sub judice the majority has apparently decided to kick over the traces. This seems unwise.
Since the appellant has not furnished us a full and complete record, we do not know why the trial judge found that "it would not be in the best interest of the minor child to place her in the custody of her father at this time." The decision of the trial court carries with it the presumption of correctness on appellate review and should be affirmed.
The majority has written that the natural father should not be denied custody absent a determination that he is unfit or unqualified to have custody or that the welfare of the child requires denial of the father's claim on that basis and provision for another custody arrangement.
The trial court appears to have determined just that when it found that it would not be in the best interest of the minor child to place her in the custody of her father at this time and ordered another custody arrangement.
I would affirm.
MILLS, Judge, dissenting:
I dissent. I would affirm.
The proceedings before the trial court were not reported. No statement of the evidence has been filed. We have no record upon which a reversal can be granted.
The order appealed is presumed correct. There is no requirement that the trial court specify its findings in writing. It found that it was in the best interest of the child to award custody to the stepfather. There is neither fact nor law to refute this finding. No abuse of discretion is shown.
The majority holds that a natural parent is entitled to custody of a child over a nonparent unless found to be unfit or unless the welfare of the child requires another custody. The trial court here awarded custody to the stepfather because it was in the best interest of the child. Nevertheless, I have no real quarrel with this holding. Fitness and best interest or welfare are not inconsistent theories. A finding of fitness would usually include best interest or welfare and, on the other hand, a finding of welfare or best interest would usually include fitness. It seems to me that both must be considered. They go hand in hand. They are mutually inclusive. We should and must deal with substance, not semantics.
It appears to me that if the Scott case is factually distinguishable from this case, as agreed by the majority, it would be difficult to recede from the rationale of the Scott case, as is being done by the majority. This is inconsistent. This is impossible.
I also do not agree with the majority that upon remand the trial court shall consider the evidence in the light of the majority opinion and enter a new order. Because no record was made of these proceedings, I would remand to commence the proceedings anew and to base the new order on the new evidence.
To me the welfare of a child is much more important than the mere right of a natural parent to custody of the child. To assure the greatest potential for a healthy, happy and productive life, I would require that in child custody proceedings the prospective parent must prove fitness and welfare. *1063 Is this too much? Can we afford to do less? The answer is no.