484 So.2d 1385 (1986)
Doyle R. ALDERMAN, Appellant,
v.
Suzanne E. ALDERMAN, Appellee.
No. BF-436.
District Court of Appeal of Florida, First District.
March 20, 1986.
Katherine Brown, of Pajcic, Pajcic, Dale & Bald, Jacksonville, for appellant.
Robert W. Elrod, Jacksonville, for appellee.
*1386 NIMMONS, Judge.
The former husband (hereinafter sometimes referred to as the "father") appeals from an order modifying the final judgment of dissolution by changing the primary residence of the parties' daughter to the daughter's paternal grandmother, modifying child support and modifying husband support. We reverse.
In the final judgment of dissolution, entered in September 1983, the court incorporated into the judgment a stipulation between the parties awarding to the parties shared parental responsibility for the two children, the former wife (hereinafter sometimes referred to as the "mother") being awarded the primary physical residence and custody of the son, Keith, and the former husband being awarded the primary physical residence and custody of the daughter, Danielle.[1] The son has since reached majority and this appeal does not involve him. The final judgment also awarded to the former husband exclusive use and possession of the marital home subject to certain conditions including the daughter's continuing residence with him. The judgment further provided:
4. The wife shall pay to the husband the sum of $120 per month as and for support of the minor child, DANIELLE S. ALDERMAN, until said child reaches the age of eighteen, marries, or becomes self-supporting. Said payments shall be made on the first of the month and shall be made directly to the husband.
5. The wife shall pay the sum of $180 per month as and for support of the husband until the husband remarries, the parties home is sold, or further order of the court. Said payments shall be made on the first of the month directly to the husband.
In October, 1984, the former wife petitioned for modification of the final judgment seeking a change in Danielle's primary residence from the former husband to Danielle's paternal grandmother, elimination of the former wife's obligation to pay child support obligations to the former husband and elimination of her obligation to pay support under paragraph 5, supra.
At the hearing on the petition for modification which was held at two sittings on January 8 and February 19, 1985, the former wife testified that Danielle was staying with her paternal grandmother and step grandfather most of the time. She said she believed the child would be better off with the grandmother, in part because the father was not spending enough time with the child. With respect to the support requirements of paragraph 5 of the judgment, although couched in terms of "husband support," the former wife said that she understood such payments were for the benefit of the child.
The grandmother testified that the child has a room and clothes at her home and that until sometime in October 1984, the child was spending about 80% of the time in the grandmother's home but she acknowledged that this changed, starting in October, to 50% of the time. The grandmother said that this change coincided with the time when the mother's petition for modification of custody was filed. However, she admitted that she did not know whether the father's keeping the daughter more frequently at his home was attributable to other causes such as the time change under daylight savings time or the starting time of the daughter's school, her school being situated closer to the father's home.
The father testified that he had been spending much more time with his daughter since the summer of 1984 but that, even when the child had been staying more at the grandmother's house, he still had constant contact with the child. He explained that since the divorce he has gradually cut back on his outside activities such as his union responsibilities as president of a local labor union and his political activities in the *1387 local party organization. He said that he had ceased those activities such that he was able to spend more time with his daughter. He told the court of his involvement in various activities with his daughter, such as girl scouts and school functions.
The step-grandfather testified that he would like to have the child and thinks it would be in the child's best interest.
After the above testimony and an unreported in camera interview of the child, the trial court entered an order modifying the order of dissolution by granting primary residence of the child to the grandmother, requiring each parent to pay $100 a month in child support to the grandmother, and relieving the former wife of her support obligation towards the former husband.
Modification of child custody requires a showing of a substantial change in circumstances since the time of the original judgment and that the best welfare of the child will be promoted by such change in custody. Sanders v. Sanders, 376 So.2d 880 (Fla. 1st DCA 1979); Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984); Haines v. Haines, 417 So.2d 819 (Fla. 4th DCA 1982). This would be the extent of the former wife's burden in the instant case if she were seeking a change of custody to herself, a burden which has been characterized as an "extraordinary" one. Zediker, supra, at 1036; McGregor v. McGregor, 418 So.2d 1073 (Fla. 5th DCA 1982).
However, the petitioner who seeks modification so as to change custody to a third person (a person other than a parent) must additionally demonstrate that the custodial parent "is disabled from exercising custody or that such custody will, in fact, be detrimental to the welfare of the child." In Re Guardianship of D.A. McW, 460 So.2d 368 (Fla. 1984); Pape v. Pape, 444 So.2d 1058 (Fla. 1st DCA 1984). This is true even though the third person is the child's grandparent or other blood relative. In Re Guardianship of D.A. McW, supra.
The trial court's order modifying custody contains no findings of fact or conclusions of law and no indication of what standard the trial court applied in reaching its decision. However, the court announced towards the end of the hearing, after the court's in camera interview of the child, that "nobody is neglecting or abusing the child as far as I can tell."
We also note that the petition for modification, although alleging (1) that the father "has relegated the custody of the child to the paternal grandparents" since the entry of the final judgment, (2) that the child has been living with such grandparents, (3) that it is in the best interest of the child that the primary physical residence be modified to the grandparents, and (4) that the father has not been using the mother's child support payments for the benefit of the child, contained no allegations that the father was unfit or disabled from exercising custody or that such custody would be detrimental to the welfare of the child. Even had there been such allegations, there was no competent substantial evidence which would have supported the same, especially in view of the court's above-referred announcement.
In Pape v. Pape, supra, this court observed:
Generally, in the absence of a finding of abandonment, or that the natural parents are unfit, strangers, even grandparents, may not be awarded permanent custody of children, where the natural parents have not relinquished their rights. Besade v. Besade, 312 So.2d 484 (Fla. 3rd DCA 1975). Although the circumstances of particular cases such as in Gorman v. Gorman, 400 So.2d 75 (Fla. 5th DCA 1981), and Scott v. Singleton, 378 So.2d 885 (Fla. 1st DCA 1979), may well justify an award of custody to a non-parent, the mere fact of temporary physical possession by a stepparent does not in itself furnish grounds for permanent deprivation of parental custody. See, In Interest of H., 320 So.2d 868 (Fla. 4th DCA 1975); State ex rel Sparks v. Reeves, 97 So.2d 18 (Fla. 1957); and Wray *1388 v. Williams, 352 So.2d 152 (Fla. 2nd DCA 1977). Parents have a natural and a legal right to the custody of their children, and, other things being equal, the court should award custody to a natural parent rather than one who is not a parent. 25 Fla.Jr.2d, Family Law, Section 525.
Id. at 1060. On the evidence presented in this case, it cannot be fairly concluded that the father had abandoned the child or relinquished his rights as a parent within the meaning of Pape and the authorities cited therein.[2]
We express no opinion as to whether the evidence would have supported a modification petition seeking a transfer of custody to the mother instead of to the grandparent. As earlier noted herein, a more stringent standard is required where custody is sought to be transferred to a third person.
In view of our reversal of the trial court's transfer of Danielle's custody, the order's child support modifications are also reversed.[3] The final judgment's provision in paragraph 5, supra, requiring payment of support to the former husband, which provision, as earlier noted, had been stipulated to by the former wife, was also terminated by the court. The former wife asserts that such termination was appropriate because that support provision was really in the nature of child support to help the former husband maintain the marital home for the child. We disagree. The plain language of the judgment is that the award is "support for the husband." The husband was to receive support "until the house is sold, the husband remarries, or further order of the court." Nowhere is the support conditioned upon custody of the child.
The order appealed is Vacated and this cause is Remanded for the entry of an amended order consistent with this opinion.
SHIVERS and JOANOS, JJ., concur.
NOTES
[1] The terms "custody" and "primary physical residence" will, for the most part, be used herein interchangeably inasmuch as  at least for purposes of the issues in this case  the same legal principles governing modification of custody are applicable to the modification of primary physical residence. The parties have not suggested otherwise.
[2] Appellee relies in part on Scott v. Singleton, 378 So.2d 885 (Fla. 1st DCA 1979). There, the former wife had been awarded custody of the two daughters when the marriage was dissolved in October, 1973. The former wife died in February, 1979. The daughters' maternal grandmother and the natural father both sought custody. The trial court awarded custody to the grandmother, the trial court finding that both the natural father and the grandmother were "eminently fit and proper persons to have custody" but that the "welfare and interest of the two minor children will best be served by their remaining in the custody of the grandmother." This court affirmed, rejecting the father's contention that his right to custody as the natural father was superior to that of the grandmother. This court held that "[t]he best interest of the child is the test in custody cases" and that "[t]he right of a natural parent to custody of his child is secondary." Subsequently, in Pape v. Pape, supra, we receded, at least in part, from Scott v. Singleton. The Supreme Court of Florida did likewise in In Re Guardianship of D.A. McW., supra, in which the Court expressly disapproved Singleton "to the extent that it did not address the appropriate test to determine the custody rights of a natural parent as opposed to the rights of a third party." Id., 460 So.2d at 370. The Supreme Court said that it did not, however, disapprove the result in Singleton because it appeared that the children had resided almost exclusivelv. in the grandmother's home for six years prior to the mother's death and that "the natural father in Singleton had virtually no involvement with the children during that time." Id. at 370. In the instant case, on the other hand, the father has had substantial and continuing involvement with his daughter throughout the relatively brief period since the dissolution. It could hardly be said that the father had, within the meaning of Pape, abandoned his daughter or relinquished his rights as a parent.
[3] The trial court's order did not purport to terminate or modify the final judgment's award to the husband of the exclusive use and occupancy of the marital home and the parties have sought no ruling in this court regarding the use and occupancy of the home.