784 So.2d 594 (2001)
K.R., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D00-2740.
District Court of Appeal of Florida, Fourth District.
May 16, 2001.
*595 Kathleen K. Pena of Law Offices of Kathleen K. Pena, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrice Paldino, Assistant Attorney General, Fort Lauderdale, for appellee.
WARNER, C.J.
Appellant ("the father") appeals an adjudication of his child as dependent based upon the trial court's finding that the father's verbal abuse of the mother and his threats of physical punishment of the child constituted abuse within the dependency statute. We reverse, concluding that there is no evidence in the record which supports the statutory requirements for an adjudication of dependency.
This case involves a dependency action filed with respect to the father's seven year old son. The father and mother were never legally married but had cohabited for approximately thirteen years. At the time of the adjudicatory hearing, they no longer lived together. The petition made several allegations of abuse and neglect involving the father which included: (1) exposure of the minor child to domestic violence between the mother and the father; and (2) excessive discipline by hitting the child with a wooden dowel. Because the mother had agreed to receive services voluntarily, the Department of Children and Family Services ("Department") did not allege that the mother was an offending party.
At the adjudicatory hearing, the mother testified that for the last several years the parents frequently argued about the care of the child. The father desired to home school the child, and after a while the mother objected to this. The mother candidly admitted that she was the one who generally started arguments in front of the child. The father objected to this behavior. She admitted calling the father names, and the father admitted calling her names, but said that he never did it in the child's presence. Also, the mother did not testify that the child was present during these arguments. Neither the guardian ad litem nor a counselor who saw the child regularly could say that the child had heard the father call the mother names, even though the counselor reported that the child had said that the mother called the father bad names.
In one incident, approximately a year before the petition was filed, the mother and father were arguing about home schooling. The father pushed the mother down onto the bed when she tried to escape. The child did not see the incident. In another incident, when the father was attempting to discipline the son, the father shut the bedroom door on the mother who wanted to enter the bedroom where he had taken the child to be disciplined or talked to. The mother fell down, but neither the child nor the father saw her fall. She admitted she was hysterical during this incident, and the husband was simply trying to exclude her from the room. The mother admitted that no violence took place.
In their entire thirteen year relationship, the mother remembered only these two physical altercations with appellant. There was no testimony that the child witnessed any physical acts of violence.
The mother also testified that she witnessed the father hit the child with a wooden dowel on several occasions. The dowel was about a foot or two long and was the diameter of the husband's little finger. The child also told the guardian that the father would strike him only once with the dowel when disciplining him. No one reported that the child suffered any *596 bruising as a result of this discipline. While the mother denied using the dowel on the child, the child had stated otherwise to the guardian ad litem.
The counselor, who had seen the child but was not a licensed therapist, was allowed to testify as to his contact with the child. The child told the therapist that "whenever my father does something wrong, it's because my mother provokes him." The child appeared to be protective of his father. The counselor testified that the parents had to work on their parenting skills to be more consistent in their approach to raising the child. The child's only identified problem was some apparent negative feelings towards his mother. However, the counselor testified that the child was developing and growing well. While he was asked many questions regarding the effect of domestic violence on children generally, he never testified that this child was the victim of domestic violence, that he was a witness to domestic violence, or that he exhibited any negative symptoms of a child exposed to domestic violence.
A child protective investigator supervisor also testified, but his investigation was cursory. His testimony centered on the use of the wooden dowel to discipline the son. When asked whether the father posed a substantial risk to the child, he testified that the use of the dowel to hit a child is "asking for trouble as a parent" because the dowel will most likely leave a mark on the child. He had no evidence, however, that this child had been physically injured as a result of the discipline.
The guardian ad litem testified that she feared that the child was being inappropriately coached and that he was being alienated from his mother by the father. Despite the discipline he received from the father, the child did not exhibit any anxiety toward the father. The child did not testify at trial. Although there was some mention of the court interviewing the child, no interview ever occurred.
In announcing its findings, the court dismissed the allegations of dependency based upon the corporal punishment through the use of the dowel and other matters which the state failed to prove. However, the court found neglect sufficient to declare dependency. The court explained: "I think the glue that holds all these issues together ... is the animosity that exists between the father and mother in this situation. It's this animosity that has created these other things becoming issues...." The court noted that the father was much larger than the mother, and went on:
This atmosphere between the two of you, this dislike, this animosity, this resentment that exists even today, is something that can't help but be reflected back to the child. It can't help but be reflected. It's like a mirror. You don't have to do it in the presence. It's like taking a drug. You don't have to take the drug in front of the child for the child to get the impact of that drug in the parent. If you have that kind of animosity, you don't have to be saying these words and pushing each other and closing these doors and locking these doors in front of the child in order for that child to haveto have an impact on the child. And consequently I find that the child's mental and emotional health can be significantly impaired because of this atmosphere around you. And I would adjudicate the child dependent, finding that by [a] preponderance of the evidence that the child is dependent. [Emphasis supplied].
In the adjudication of dependency, the trial court found:
The minor child, is at risk of emotional abuse by the natural father, [K.R.], as *597 defined in Florida Statutes 39.01(46) in that while the parents were together, [K.R.] did in part cause and allow to exist a great deal of tension in the home environment which placed the child's emotional, physical, or mental health to be in danger of being significantly impaired in that the father exposed the child to an environment threatened by family violence and possible physical abuse. Specifically the father would violently verbally argue with the mother and in conjunction with that arguing would hit or threaten to hit the child with a wooden stick.
The court specifically found that the Department had failed to meet its burden as to the allegations regarding excessive corporal punishment of the child by using the wooden dowel. In this appeal, appellant challenges the court's ruling that the child was dependent within the meaning of the statutes.
Declaring a child to be dependent requires a finding that the child is either (1) abandoned, abused, or neglected by the child's parents, or, among other things, (2) "at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents ...." § 39.01(14)(a) and (f), Fla. Stat. (1999) (emphasis added). "Neglect" is defined in section 39.01(46), Florida Statutes (1999), as follows:
"Neglect" occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.

(Emphasis added).
Here, the trial court found neglect based on its determination that the father created an environment that could significantly impair the child's mental, emotional, or physical health. To establish the neglect, the court determined that "the father exposed the child to an environment threatened by family violence and possible physical abuse." However, this finding is contrary to the evidence. The trial court dismissed charges of excessive corporal punishment, finding no physical abuse of the child. There was no evidence of physical violence other than the father pushing the mother onto the bed, which occurred over a year prior to the hearing and was not witnessed by the child. See D.H. v. Dep't of Children & Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000) (statutory definition of harm includes domestic violence committed in the presence of the child).
Under section 39.902(1):
"Domestic violence" means any assault, battery, sexual assault, sexual battery, or any criminal offense resulting in physical injury or death of one family or household member by another who is or was residing in the same single dwelling unit.
In the instant case, there were no physical injuries to the child or to the mother. The corporal punishment administered to the child was within the type of discipline exempted from the statutory definition of abuse. See § 39.01(2), Fla. Stat. (1999) ("Corporal discipline of a child by a parent... for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child."). The order's recitation of family violence and "possible physical abuse," according to the statutory definitions of those terms, is neither supported by the record nor the findings made when the court adjudicated the child as dependent at the hearing.
*598 In its oral findings, the court found that the animosity between the parents could not help but be reflected back on the child. Based on this finding, the court determined that the child's mental and emotional health "can be" significantly impaired because of this atmosphere around the parents. However, not only was there no evidence that the child's mental or emotional health was presently impaired, there was no testimony that there was a danger of significant impairment to the child's mental or emotional health, and no witness qualified to give such an opinion testified.
In sum, because none of the incidents of "possible physical abuse" occurred in the presence of the child, this case comes down to the question of whether verbal arguments between parents is sufficient to constitute "neglect" within the statutory definitions to support an adjudication of dependency. We conclude that it is not, absent evidence of injury or the risk of injury to the child.
"Neglect" requires a child's mental or emotional health to be significantly impaired or at risk for significant impairment. An impairment is an injury, and the statute defines "mental injury" as "an injury to the intellectual or psychological capacity of a child as evidenced by a discernible and substantial impairment in the ability to function within the normal range of performance and behavior." § 39.01(44), Fla. Stat. (1999). There was no evidence in this case of any psychological problems that the child was experiencing or any deviation from the normal range of performance and behavior. In fact, the child's counselor testified that the child was developing normally. No one testified to any injury to the intellectual or psychological capacity of the child or even that he was emotionally injured as a result of the arguments between his parents. At most, the guardian ad litem, who was not an expert, stated that the child tried to be overly protective of his father. The trial court did not interview the child, and the child was not examined by a psychological expert.
Arguments between parents are a common occurrence. Even in the most normal of families, people argue, sometimes frequently and loudly. Children never like to hear their parents argue. But in divorce situations, parents may argue constantly. By doing so, we do not believe that the parents are "neglecting" their children within the meaning of the dependency statutes, so as to permit state intervention. We have been unable to locate a single case in any state where verbal abuse between the parents alone was grounds for state intervention.
Usually, problems such as the ones these parents are having reveal themselves in divorce proceedings where custody and visitation are at issue. In such cases, judges can order parents to attend parenting courses, order visitation schedules which reduce contact, provide for how parenting decisions will be made, and the like. The problem in the instant case is that because the parties were never married, no divorce action was filed where these problems might normally be resolved. Rather than resorting to the state agencies to resolve the issues, they could be better addressed through an action pursuant to Chapter 742. While there is no question of parentage in this case, that statute permits a judge to order visitation rights and support. See § 742.031(1), Fla. Stat. (1999) ("The court may also make a determination as to the parental responsibility and residential care and custody of the minor children in accordance with chapter 61."). In connection with such determinations, courts routinely require the parents to attend parenting classes (as recommended by the counselor in this case) and, *599 if necessary, courts may require the parties and the children to obtain psychological evaluations. Thus, even if the state is not involved through a dependency action, the parents have some method available to arbitrate their disputes and develop a plan of care and sharing of responsibility for their child.
The parents obviously had differences of opinion regarding the rearing of the child that resulted in frequent arguments, provoked mostly by the mother by her own admission. The father may not have had the best skills in coping with the mother's argumentative nature. The parties are now separated, however, and there was no testimony that they might resume living together. On this record, and considering the statutory requirements for an adjudication of dependency, we conclude that the trial court erred in finding the child dependent as to his father. We reverse for dismissal of the proceeding.
POLEN and FARMER, JJ., concur.