818 So.2d 569 (2002)
Patricia BATEMAN, Appellant,
v.
Larry A. JOHNSON, Jr., and Lana Johnson Barrett, Appellees.
No. 2D01-3462.
District Court of Appeal of Florida, Second District.
March 8, 2002.
*570 Michael C. Tice, Fort Myers, for Appellant.
Virginia R. Vetter of Vetter & Hunter, Tampa, and Stephen D. Thompson, Fort Myers, for Appellees.
COVINGTON, Judge.
The maternal grandmother, Patricia Bateman, appeals an order granting temporary custody of her fourteen-year-old granddaughter, Morgan, to the child's father. We conclude that the trial court did not abuse its discretion in this instance and therefore affirm.
Morgan's parents, Larry A. Johnson, Jr. and Lana Johnson Barrett, were married in March 1988. Having determined that they had irreconcilable differences, Mr. Johnson and Ms. Barrett, in March 1997, signed a marital settlement agreement. While the agreement provided that Mr. Johnson and Ms. Barrett would have "shared parental responsibility," the parents stipulated that the primary physical residence of Morgan and her sister would be with Ms. Barrett. Even when her parents were married, Morgan spent a considerable amount of time at Mrs. Bateman's house. Before Morgan started school, Mrs. Bateman and her husband watched Morgan during the day, and she spent three or four nights a week at their home. Eventually, Morgan spent almost all of her time at Mrs. Bateman's home.
On September 2, 1997, the couple entered into a supplemental marital settlement agreement, which provided:
The parties shall share parental responsibility for the children of the marriage, under the following terms and conditions. Each party may freely delegate or entrust to the other the care of the children for any period agreed upon by the parties.
The primary residential parent of BRITTANY JOHNSON ... is LANA JOHNSON. The primary residential custody of MORGAN JOHNSON is PATRICIA BATEMAN, the maternal grandmother.
The settlement agreement and the supplemental settlement agreement were specifically incorporated into the final judgment of dissolution, which was entered on January 14, 1998. Significantly, Mrs. Bateman was not made a party to this order. In fact, she testified that she was unaware that she had been named Morgan's primary residential custodian until sometime during the year 2000.
On May 2, 2001, Mr. Johnson and Ms. Barrett entered into a postjudgment agreement changing Morgan's primary physical residence to Mr. Johnson's residence. The agreement specifically provided:
a. Children. We are the legal and natural parents of Morgan M. Johnson, born on July 29, 1987 and Brittany A. Johnson, born on October 1, 1998. We have no other children together, living or deceased. No other children are contemplated.

*571 b. Primary Physical Residence. BRITTANY shall continue to reside with her mother. MORGAN, who has been temporarily living with her grandmother, shall now reside with her father, Larry Allen Johnson, Jr. We agree it is in MORGAN's present best interest to primarily reside with her father at this time.
The trial court approved the postjudgment agreement on May 24, 2001, and on July 19, 2001, Mr. Johnson filed a motion for temporary custody. A hearing was held, and the trial court granted Mr. Johnson's motion for temporary custody. The trial court determined that Mr. Johnson was a fit parent. It also found that when balancing Mr. Johnson's constitutional rights to raise his own child versus any possible detriment to Morgan, the equities were in Mr. Johnson's favor. This timely appeal followed.
The Florida Supreme Court has stated that when a custody dispute is between a parent and a third party, "the test must include consideration of the right of a natural parent `to enjoy the custody, fellowship and companionship of his offspring.... This is a rule older than the common law itself.'" In re Guardianship of D.A.McW., 460 So.2d 368, 370 (Fla.1984) (citing Sparks v. Reeves, 97 So.2d 18, 20 (Fla.1957)). A legal parent should be denied custody only when there is proof that the parent is unfit or that the custody would be detrimental to the child's welfare. Id.
Here, the trial court found, and we agree, that Mr. Johnson is not an unfit parent, nor is he unable to care for his child. Thus, the court's attention turns to whether it would be detrimental to Morgan's welfare to be placed in her father's custody.
Detriment is defined as "more than the normal trauma caused to a child by uprooting him from familiar surroundings such as often occurs by reason of divorce, death of a parent or adoption. It contemplates a longer term adverse effect that transcends the normal adjustment period in such cases." Filter v. Bennett, 554 So.2d 1184, 1185 (Fla. 2d DCA 1989); see also Murphy v. Markham-Crawford, 665 So.2d 1093 (Fla. 1st DCA 1995). To deny a parent custody of his child based on a finding of detriment, the change in custody would have to be "likely to produce mental, physical, or emotional harm of a lasting nature." In Interest of B.B., 559 So.2d 1277, 1278 (Fla. 2d DCA 1990).
The record does not support a finding of detriment. During the hearing, the trial court heard testimony from a licensed mental health counselor and a clinical psychologist. Both therapists testified that Morgan would have difficulty adjusting to a new home, new school, and new friends. The therapists also testified that because Morgan is going through adolescence, consistency is important. Neither therapist testified that a change in custody was likely to produce mental, physical, or emotional harm of a lasting nature. Additionally, neither therapist testified that Morgan's difficulties would transcend a normal adjustment period. The testimony focused on how Morgan was dealing with the custody dispute, not the long-term effects of a custody change.
This case is similar to In re Marriage of Matzen, 600 So.2d 487 (Fla. 1st DCA 1992). In Matzen, the father sought modification of a temporary custody order that awarded custody of his children to their grandmother. The First District held that although the grandmother may have been able to better provide for certain educational or religious needs, the father was entitled to custody of his children absent a showing of unfitness or detriment. Id. at 489. Additionally, the case at bar is distinguishable from Carpenter v. Berge, 686 So.2d 759 (Fla. 5th DCA 1997), where a *572 father sought a modification of custody after the grandmother had been awarded permanent custody.
Here, although Morgan's primary physical residence was with Mrs. Bateman, both parents retained their parental rights and responsibilities. Quite significantly, when they named Mrs. Bateman Morgan's primary residential custodian, neither Mr. Johnson nor Ms. Bennett waived their parental rights. Furthermore, both parents specifically agreed that it is in Morgan's best interest to live with her father. Where both parents agree regarding the custody of their child, absent a showing of detriment or parental unfitness, this court should not interfere with that custody decision. As recognized in D.A.McW., "[t]o hold otherwise would permit improper governmental interference with the rights of natural parents who are found fit to have custody of and raise their children." 460 So.2d at 370.
We therefore affirm.
ALTENBERND and WHATLEY, JJ., Concur.