828 So.2d 476 (2002)
Kristy HAMMOND, Appellant,
v.
Jo Ann HOWARD, Appellee.
No. 5D02-402.
District Court of Appeal of Florida, Fifth District.
October 18, 2002.
Kristy Hammond, Winter Park, pro se.
Jo Ann Howard, Sorrento, pro se.
SAWAYA, J.
The natural mother, Kristy Hammond, appeals the order denying her petition to modify the temporary custody order governing her son, T.H., born September 2, 1994. Kristy, pro se, asserts that continuation of T.H. in the custody of Jo Ann Howard, Kristy's mother, is not in the best interest of T.H. because of the environment T.H. faces in Jo Ann's home. Jo Ann, also acting pro se, seeks continued custody of the child. We are compelled to reverse and remand the cause based upon the trial court's initial failure to use the correct legal standard to test Kristy's petition.
When T.H. was six months old, Kristy executed a written consent which provided that her mother, Jo Ann, was to have temporary custody of T.H. until Kristy got a job, a residence and a vehicle and straightened out her life. When it was discovered that T.H. needed surgery and the hospital refused to admit T.H. without the consent of a legal guardian, Jo Ann, in December 1997, obtained a temporary custody order. This order was rendered pursuant to a chapter 751 proceeding, which allows a relative with custody or a relative with signed, notarized consent to obtain a formal custody order. See § 751.02, Fla. Stat. (2001). Kristy's whereabouts were unknown at this timeshe had disappeared after being released from jail in November 1997.
The pro se briefs filed by Kristy and Jo Ann reflect a sad tale of irresponsibility, *477 immaturity, frustration, disappointment and distrust. As complex as the parties' familial problems appear, the dispositive legal issue in this case, although not called to our attention by either party, is relatively easy to resolve. Specifically, we must decide whether the trial court applied the correct legal standard in determining whether to grant or deny the relief requested in Kristy's petition. The following facts are necessary to an understanding of our resolution of this issue and the basis for our reversal and remand.
Because Kristy's whereabouts were unknown, the original temporary custody order, rendered on December 1, 1997, was entered without notice to Kristy. Hence, there was never a full evidentiary custody hearing. Moreover, the temporary order specifically recognizes that "if the child's mother Kristy Hammond desires to be heard at any time, with or without the assistance of counsel, she may file a petition or a motion, and the Court will set the matter for hearing post haste." (Emphasis in original). While Kristy was apparently in agreement with the temporary arrangement, as it comported with her handwritten consent to Jo Ann having custody and she allowed the arrangement to continue some two and one half years, Kristy never waived her right to a full evidentiary hearing.
In December 2001, Kristy filed her petition to modify the custody and/or visitation wherein she alleged that she had re-established a relationship with T.H., was living in a safe environment, and felt that she was able to support and raise her children. Although the petition speaks in terms of both N.H. (another of Kristy's children being raised by Jo Ann) and T.H., much of the substance of the petition seeks the return of custody of only T.H. Kristy contended that it was in T.H.'s best interest to return to her because she can give him what he needs and spend time with him. She asserted that there were too many people telling T.H. what to do at Jo Ann's house and that N.H. was trying to get T.H. in trouble. Alternatively, if the court did not give her custody back, Kristy sought a visitation order.
A hearing was held on Kristy's motion, but no transcript was provided to this court. In any event, the trial court wrote in his order that T.H. and N.H. were doing well in school and had satisfactory conduct. The court noted that "the only reason given to this court [by Kristy] as a substantial change in circumstances is `Because I think they should be raised by their mother.' There has been no proof presented that this would be in the best interests to uproot the children." The court denied the petition.
The concern we have in this case is whether the proper legal standard was applied by the trial court to arrive at the decision to deny Kristy's petition. The fact that Kristy petitioned to modify the temporary order instead of moving to terminate it or otherwise seeking a full hearing on the issue of custody appears to have caused the trial court to treat Kristy's petition as a petition to modify a final order. This resulted in Kristy being held to the higher standard of showing that a substantial change in circumstances had occurred since entry of the original order and that the welfare of the child would be promoted by a modification of custody. See Ackerson v. Murphy, 622 So.2d 154 (Fla. 5th DCA 1993); Stricklin v. Stricklin, 383 So.2d 1183 (Fla. 5th DCA 1980). This was not the correct standard given that there has never been a final custody determination. The best interest test, which generally governs custody disputes between two parents, is not the correct standard either. See In re Guardianship of D.A. McW., 460 So.2d 368, 370 (Fla. *478 1984) (affirming that the "best interests" test is not the proper legal standard for determining custody between a natural parent and a third party); Daugharty v. Daugharty, 571 So.2d 85 (Fla. 5th DCA 1990).
Rather, this court has consistently applied a rule of parental preference which provides that "where the custody dispute is between the parents and a third person, the rights of the parents are paramount unless there is a showing that the parents are unfit or that, for some substantial reason, custody in either or both of the parents would be detrimental to the child's welfare." Daugharty, 571 So.2d at 86 (citing Cherry v. Cherry, 508 So.2d 782 (Fla. 5th DCA 1987); Pape v. Pape, 444 So.2d 1058 (Fla. 1st DCA 1984); Johnson v. Richardson, 434 So.2d 972 (Fla. 5th DCA 1983); Besade v. Besade, 312 So.2d 484 (Fla. 3d DCA 1975)).[1] This rule, which is premised on the widely held view that the family unit should be preserved, derives from the seminal case of In re Guardianship of D.A. McW., wherein the court stated that "[w]hen the custody dispute is between a natural parent and a third party,... the test must include consideration of the right of a natural parent `to enjoy the custody, fellowship and companionship of his offspring .... This is a rule older than the common law itself.'" In re Guardianship of D.A. McW., 460 So.2d at 370 (quoting State ex rel. Sparks v. Reeves, 97 So.2d 18, 20 (Fla.1957)). This court is not alone in its application of the rule. See Bateman v. Johnson, 818 So.2d 569 (Fla. 2d DCA 2002); Pape; Besade.
The Legislature embraced the parental preference rule when it enacted section 751.05(7), Florida Statutes, which specifically provides that a parent may, at any time, petition for termination of a temporary custody order and the trial court must test the petition by determining the fitness of the parent:
At any time, either or both of the child's parents may petition the court to terminate the order granting temporary custody upon a finding that the parent requesting the termination of the order is a fit parent, or by consent of the parties.
§ 751.05(7), Fla. Stat. (2001). Because an erroneous legal standard was applied below, this cause is remanded for reconsideration under the proper standard.
REVERSED and REMANDED for further proceedings.
THOMPSON, C.J., and GRIFFIN, J., concur.
NOTES
[1] Preference to the natural parents prevails despite the fact that the third persons are capable and willing to provide better financial and social benefits to the child. See In re Marriage of Matzen, 600 So.2d 487 (Fla. 1st DCA 1992); see also Bateman v. Johnson, 818 So.2d 569 (Fla. 2d DCA 2002).