874 So.2d 634 (2004)
James WARD, Appellant,
v.
Connie WARD, Charles O. and Linda K. Hysell, Appellees.
No. 3D03-956.
District Court of Appeal of Florida, Third District.
April 14, 2004.
Rehearing Denied June 9, 2004.
*635 Martyn W.D. Verster, for appellant.
Richard G. Dunberg, for appellees.
Before GODERICH, GREEN, and WELLS, JJ.
WELLS, J.
James Ward appeals from a final judgment of dissolution of marriage, wherein the trial court denied his requests to modify a previous final judgment giving permanent custody of his minor child to Charles and Linda Hysell, the maternal grandparents, and to permit unsupervised visitation. For the following reasons, we reverse.
James and Connie Ward are the parents of a child born on November 5, 1992. In July 1998, as a consequence of marital strife and the impact it was having on their child, the Wards took their daughter to live with her maternal grandparents, the Hysells. Approximately one month later, and at the Hysells' suggestion, the Wards and the Hysells executed a custody agreement giving the Hysells "formal, legal care, custody and control of the minor child."[1] Within a few months of this agreement, the Hysells, under the aegis of Florida Statutes section 61.13(7), and relying *636 on the custody agreement, secured a judgment awarding them custody.[2]
Six months after the custody judgment was entered, the mother petitioned for dissolution of marriage and alleged that she was "a fit and proper person to have primary parental responsibility [and that it] would be in the child's best interest if the child's primary residence were" with her. She accompanied her petition with a custody affidavit showing that her parents had custody of the child pursuant to a verified child custody agreement. The father answered and counter-petitioned claiming that the custody agreement with the wife's parents was void; that he was fit to have custody; and, relying on Richardson v. Richardson, 734 So.2d 1063 (Fla. 1st DCA 1999), which declared section 61.13(7) unconstitutional, that the grandparents did not rightfully enjoy custody.
The father also filed a motion in the grandparents' custody proceeding seeking to vacate the custody judgment. That motion was denied, and the father appealed.
While the appeal from the order denying the father's motion to vacate the custody judgment was pending, the Florida Supreme Court affirmed the First District's decision in Richardson holding section 61.13(7) unconstitutional. See Richardson v. Richardson, 766 So.2d 1036 (Fla.2000). This Court subsequently affirmed the order denying the father's motion to vacate without prejudice for the father to again raise issues relating to the grandparents' custody in the dissolution proceeding. Ward v. Hysell, 777 So.2d 1206 (Fla. 3d DCA 2001).
Thereafter, the father joined the grandparents in the dissolution action and amended his answer and counter-petition to request both nullification of the custody agreement and modification of custody. He also sought unsupervised visitation.
On March 6, 2003, the trial court entered a final judgment of dissolution of marriage (the judgment considered herein). That judgment rejected the father's requests to nullify the custody agreement with the maternal grandparents and for unsupervised visitation. It also, without explication, denied the father's request to modify custody. On appeal from that judgment, the father claims that the trial court erred in denying his modification request because the record is devoid of evidence showing that he is unfit and that a change in custody would be detrimental to his child. We agree and reverse.
The grandparents argue here that the judgment must be affirmed because the father failed to demonstrate below a substantial change in circumstances and that it would be in this child's best interest to change the custody order.[3] This undoubtedly is the test applied in proceedings modifying custody judgments between parents. See Perez v. Perez, 767 So.2d 513, 516 (Fla. 3d DCA 2000)(observing that in a modification proceeding between two parents, "[a] parent seeking to modify a prior custody award bears the extraordinary burden of demonstrating a substantial *637 change in circumstances since the entry of the initial custody decree and that the child's best interest or welfare will be promoted by the change"). It was also the test applied in proceedings modifying custody judgments between grandparents and a parent before Richardson. See Carpenter v. Berge, 686 So.2d 759, 760 (Fla. 5th DCA 1997)(pre-Richardson grandparent custody case finding that "modification of permanent child custody may be ordered only upon showing of a substantial change in circumstances since entry of the original order and that the welfare of the child would be promoted by a modification of custody"); Turner v. Walvick, 666 So.2d 971, 972 (Fla. 5th DCA 1996)(pre-Richardson case noting that a judgment awarding primary residential care of a child to the grandmother could only be modified where the non-custodial parent establishes both a substantial change in circumstances and that the child's best interest will be served by the change in custody). It is not, however, the test that applies after Richardson in grandparent/parent custody proceedings.
Post-Richardson, a parent seeking to modify an order awarding custody to a grandparent need only show that he or she is fit and that a custody change will not be detrimental to the child:
When a custody dispute is between two parents, where both are fit and have equal rights to custody, the test involves only the determination of the best interests of the child. When the custody dispute is between a natural parent and a third party, however, the test must include consideration of the right of a natural parent `to enjoy the custody, fellowship and companionship of his offspring.... This is a rule older than the common law itself.' ... [I]n such a circumstance [sic], custody should be denied to the natural parent only when such an award will, in fact, be detrimental to the welfare of the child.
Richardson, 766 So.2d at 1039 (quoting In re Guardianship of D.A. McW, 460 So.2d 368, 369-70 (Fla.1984)).
In Davis v. Weinbaum, 843 So.2d 290 (Fla. 5th DCA 2003), the Fifth District Court of Appeal applied this test to affirm an order modifying custody from grandparents to a parent. There, as here, the grandparents enjoyed custody pursuant to a court approved agreement. Relying on Richardson, the Fifth District held that the test to be applied where a parent seeks to modify such a third party custody award is whether the parent is fit and whether a change in custody will be detrimental to the child:
The grandparents argue that Richardson does not apply in the instant case because their rights accrue not from section 61.13(7), but from the trial court's order giving them custody. Richardson was a modification proceeding, as in the instant case, but Richardson involved an initial attempt by the grandparents to take custody from the parent. In the instant case the grandparents had custody pursuant to a prior court order, and they claim that they are "custodial parents." We cannot agree that the difference between the instant case and Richardson is dispositive, nor can we agree that, in the absence of an adoption order, the grandparents are "custodial parents." Although Richardson is distinguished from the instant case, Richardson reaffirmed [State ex rel. Sparks v.] Reeves[, 97 So.2d 18 (Fla. 1957)] and D.A. McW., in which the supreme court stated that custody should be denied to the natural parent only when such an award will, in fact, be detrimental to the welfare of the child. *638 Davis, 843 So.2d at 293-94 (citation omitted).[4]
This conclusion is consistent with well-established legal principles:
The Florida laws give to parents the right to part with the custody of children by apprenticeship, adoption, and guardianship. The existence of these statutes, and the several specific requirements essential to the validity of such abandonment, seems to indicate that by these methods only can a parent relieve himself of his obligation to support, educate, maintain, and nurture his minor children, and his correlative right to their custody.
State v. Bollinger, 88 Fla. 123, 101 So. 282, 283-84 (1924) (citations omitted).
Here, there is no evidence that the father waived his parental rights in the custody agreement; that his parental rights were terminated; or that this child was the subject of either a guardianship or an adoption. Thus, the only issues for determination below were whether the father was a fit parent and whether it would have been detrimental to this child to change custody.
There appears to be no disagreement that the father was fit. However, neither the record nor the final judgment indicates that detriment was properly considered or litigated below. Accordingly, that portion of the final judgment of dissolution of marriage denying the father's request to modify the prior custody judgment is reversed and remanded to permit all parties to introduce evidence regarding detriment particularly, whether a change in custody is likely to produce mental, physical, or emotional harm of a lasting nature. See Bateman v. Johnson, 818 So.2d 569, 571 (Fla. 2d DCA 2002)("Detriment is defined as `more than the normal trauma caused to a child by uprooting him from familiar surroundings such as often occurs by reason of divorce, death of a parent or adoption. It contemplates a longer term adverse effect that transcends the normal adjustment period in such cases.' To deny a parent custody of his child based on a finding of detriment, the change in custody would have to be `likely to produce mental, physical, or emotional harm of a lasting nature'") (citations omitted)(emphasis added).[5]
We are mindful that this child is thriving in her current home with the maternal grandparents and that our decision may disrupt the stability of that environment. However, it is the responsibility of the courts to enforce the law and to protect acknowledged constitutional rights. It is up to this child's parents and her grandparents to demonstrate their concern by working together to assure her well-being no matter where it is ultimately determined that she should live.
*639 Reversed and remanded with instructions.
NOTES
[1] This agreement was prepared by the grandparents' attorney. Both the father and the mother, who were unrepresented by counsel, testified below that the agreement was only temporary. The father additionally claimed that the purpose of this agreement was to permit his daughter to attend school in the grandparents' school district.
[2] Section 61.13(7), Fla. Stat. (1998) provided:

In any case where the child is actually residing with a grandparent in a stable relationship, whether the court has awarded custody to the grandparent or not, the court may recognize the grandparents as having the same standing as parents for evaluating what custody arrangements are in the best interest of the child.
[3] The grandparents' also make a jurisdictional argument which is without merit. Florida Statutes section 61.13(2)(c) permits an action to be brought either in the circuit court where an original custody award was enteredhere, the 11th Judicial Circuit"or" in the circuit court of the county where either parent and the child residehere again, the 11th Judicial Circuit.
[4] The final hearing in this action was held almost a month before Davis was released. Davis was, nonetheless, binding on the trial court since it was released two weeks before entry of the final judgment. See University of Miami v. M.A., 793 So.2d 999, 1000 (Fla. 3d DCA 2001)(noting that trial courts are obligated to follow decisions from the other district courts of appeal where neither the Florida Supreme Court nor this court has spoken on an issue).
[5] To this end, the father should be accorded an opportunity to select a qualified mental health professional (preferably a licensed child psychologist), who should be accorded unfettered access to this child, and this child's medical, psychological, school and other records, for the following purposes: (1) evaluating the child to determine whether any real, lasting harm will occur should she be transitioned to her father's (or her mother's) custody; (2) making recommendations for such a custodial transition; and (3) if custody is not restored to the father, facilitating expeditious unsupervised visitation with her father.