WETHERELL, J.
Mariah Seilkop appeals an order denying her petition to terminate Barbara and Richard Barker’s temporary custody of her minor child. Ms. Seilkop argues that the trial court erred because the evidence introduced at the hearing on the petition does not support a finding that she is an unfit parent. We agree and reverse.
In January 2012, Ms. Seilkop, who was 18 years old at the time, asked the Barkers to take custody of her eight-month old son so that she could enroll in college and get on her feet financially. The Barkers are the child’s paternal great aunt and uncle, and without objection,[1] they were granted temporary custody pursuant to an order entered under chapter 751, Florida Statutes.
In May 2018, Ms. Seilkop petitioned the court to terminate the Barkers’ temporary custody, asserting that she was now in a position to meet her son’s needs. See § 751.05(6), Fla. Stat. (2018). The Barkers objected to the termination of their custody and an evidentiary hearing was held on the petition.
The trial court denied the petition at the conclusion of the hearing, finding that Ms. Seilkop was not a fit parent because (1) her second-floor apartment located near a retention pond was “unfit and dangerous” and “likely to result in harm to the child;” (2) her history of “unstable relationships, domestic violence, and other illegal activities, such as underage drinking” had had a detrimental impact on the child, and her attitude toward such activities demonstrated “immaturity;” and (3) she was unable to adequately care for the child during monthly visitations. The trial court also found that the child is “very bonded to the [Barkers] and removing him abruptly would be detrimental.” This appeal followed.
Section 751.05(6) provides in pertinent part that the trial court “shall terminate the [temporary custody] order upon a finding that the parent is a fit parent .... ” The term “fit parent” is not defined, but another provision of section 751.05 explains that a parent is “unfit” if the parent has “abused, abandoned, or neglected the child, as defined in chapter 39.” § 751.05(3)(b), Fla. Stat. (2013). Thus, by implication, a “fit parent” is one who has not abused, abandoned, or neglected the child, as those terms are defined in chapter 39.
Because it is undisputed that Ms. Seil-kop has not abused or abandoned her son, the trial court’s determination that she is not a fit parent could only be supported by a finding that Ms. Seilkop neglected her son. Under chapter 39, neglect occurs only when “a child is deprived of ... necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment [that] causes the child’s physical, mental, or emotional health to be significantly impaired.” § 39.01(44), Fla. Stat. (2013); see also K.R. v. Dep’t of Children & Families, 784 So.2d 594, 598 (Fla. 4th DCA 2001) (explaining that “[a]n impairment is an injury”). Here, the circumstances cited by the trial court are legally insufficient to support a finding that Ms. Seilkop neglected her son.
First, the finding that Ms. Seilkop’s apartment is dangerous and likely to harm the child is purely speculative and does not rise to the level of neglect under section 39.01(44). See J.H. v. State, 480 So.2d 680, *868 683 (Fla. 1st DCA 1985). No evidence was presented to show that the child had ever been left unattended inside the apartment or that he had left the apartment on his own and wandered over to the nearby-pond. Moreover, Ms. Seilkop testified that she had installed a lock on the door to prevent such an incident from occurring.
Second, Ms. Seilkop’s history of underage drinking and poor romantic choices does not constitute neglect. There is no evidence in the record that her actions resulted in physical, mental, or emotional harm to the child or that they caused him to be deprived of food, clothing, shelter or medical care. Furthermore, the court’s finding that Ms. Seilkop engaged in “other illegal activities” is not supported by the record. Although the Barkers and the court may find Ms. Seilkop’s behavior immature and disapprove of her lifestyle, “poor parental judgment” is not neglect. See L.P. v. Dep’t of Children & Family Servs., 962 So.2d 980, 982 (Fla. 3d DCA 2007).
Third, evidence of the child’s condition after visits with Ms. Seilkop was insufficient to show that he had been neglected while in her care. Mrs. Barker testified that on one occasion (approximately a year before the petition was filed), the child returned from a visit with Ms. Seilkop hot, red-faced and fussy, wearing a dirty diaper, with sour milk in his cup, and that after another -visit he was “very clingy” for several days until he settled back into his routine. However, Mrs. Barker also testified that, after more recent visits, although the child still appears to be tired and hungry after he is returned by Ms. Seil-kop, “he does seem to bounce back quicker.” Moreover, there was no testimony to show that the child’s condition on either of the earlier occasions was the result of “deprivation” of necessary food, clothing, or shelter or that the child’s physical, mental, or emotional health had been “significantly impaired.”
with respect to the trial court’s finding that it would be detrimental to return Ms. Seilkop’s son to her, this court explained in a similar case (albeit one not arising under chapter 751, Florida Statutes) that:
the detriment which must be established ... before a natural parent’s request for custody may be denied involves something much more serious than the discomfort normally experienced by a child when moved from a familiar environment into one engulfed by the fear and uncertainty associated with the unknown: ‘.... It contemplates a longer term adverse effect that transcends the normal adjustment period in such cases.’
Murphy v. Markham-Crawford, 665 So.2d 1093, 1094 (Fla. 1st DCA 1995) (quoting Filter v. Bennett, 554 So.2d 1184, 1185 (Fla. 2d DCA 1989)); see also Hammond v. Howard, 828 So.2d 476, 478 (Fla. 5th DCA 2002) (explaining that under the common law parental preference rule, the rights of the parents are paramount unless there is a showing that “the parents are unfit” or that custody in the parents “would be detrimental to the child’s welfare,” and suggesting that the language now codified in section 751.05(6) “embraced” this rule); but of § 751.05(6), Fla. Stat. (2013) (providing that the trial court is to consider the “best interest of the child” when determining whether to modify a temporary custody order, but providing no similar directive when determining whether to terminate a temporary custody order). The evidence presented below did not come close to meeting this standard.
In sum, because the trial court’s order denying Ms. Seilkop’s petition to terminate the Barkers’ temporary custody is not supported by legally sufficient evidence, we *869 reverse the order and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
VAN NORTWICK, J., concurs.
MAKAR, J., concurs in result with opinion.

. Ms. Seilkop consented to the petition for temporary custody filed by the Barkers, and a default was entered against the child’s father after he failed to respond to the petition.