693 So.2d 1003 (1997)
HOECHST CELANESE CORPORATION, and Shell Oil Company d/b/a Shell Chemical Company, Appellants,
v.
Robert FRY, Gerald Garske, Edwin Kasanders, Jr., Edwin Kasanders, III, Mill Dam Development Corporation, Ralph Rudolph and Johnnie Voorhees, on behalf of themselves and all others similarly situated, Appellees.
Nos. 96-1211, 96-1215.
District Court of Appeal of Florida, Third District.
March 19, 1997.
Rehearing Denied June 11, 1997.
Aragon, Burlington, Weil & Crockett, P.A., Rudolph F. Aragon and Kevin C. Kaplan, Miami; Kasowitz, Benson, Torres & Friedman, L.L.P., Hector Torres, Paul M. O'Connor, III, and Barry M. Kazan, New York City, for appellant, Hoechst Celanese Corporation.
*1004 Holland & Knight, Daniel S. Pearson, James M. Porter, D. Bruce Hoffman, and Lucinda A. Hofmann, Miami, for appellant, Shell Oil Company.
Shutts & Bowen, Richard M. Leslie, Maxine M. Long, and Rene J. Gonzalez-Llorens, Miami; Hicks & MacQuarrie, and Christopher J. MacQuarrie, Ocala, for appellees.
Before NESBITT, GODERICH and GREEN, JJ.
GREEN, Judge.
Shell Oil Company ("Shell") and Hoechst Celanese Corporation ("HCC") appeal a non-final order granting class certification in the cause below. We do not reach the asserted challenges to this order based upon our independent determination from the record that the trial court lacked jurisdiction to enter this order in the first instance. We therefore vacate the order under review and dismiss the cause below.

I
This case has had a rather unusual and intricate procedural history. To fully comprehend how it has finally made its way before us, it is necessary to provide a somewhat detailed recitation of its procedural background.
The case below was actually filed on April 3, 1995 by one Gilberto Viera purportedly on behalf of 500,000 Florida residents (hereinafter the "Viera Group") who sought to maintain the action as a class action suit against Shell, HCC and other manufacturers of raw materials used in polybutylene plumbing systems.[1] According to the complaint, the proposed Viera Group class consisted of all persons and entities that presently or previously owned structures and/or improvements to real estate in Florida containing polybutylene plumbing and who incurred any costs or expenses "by reasons of leakage from or failure, repair, or removal of, all or any portion of polybutylene plumbing." Appellees, Robert Fry, Gerald Garske, Edwin Kasanders, Jr., Edwin Kasanders, III, Mill Dam Development Corporation, Ralph Randolph and Johnnie Voorhees (collectively the "Fry Group") were not party plaintiffs to the class action filed by the Viera Group. A month after the Viera Group filed its action, the Fry Group, through separate counsel, instituted a similar proposed class action suit against Shell and HCC in Ocala, Marion County, Florida. The Fry Group essentially asserted the same claims in Marion County as the Viera Group had below. The Fry Group's proposed class, however, consisted of all individuals and entities authorized to do business in the State of Florida that presently owned or previously owned mobile homes in Florida in which there is polybutylene plumbing and who incurred costs or expenses "by reasons of leakage from or failure, repair, or removal, of all or any portion of polybutylene plumbing."

II
While the Viera Group's action was pending in Miami and the Fry Group's action was pending in Ocala, but prior to class certification in either case, a group of non-Florida residents led by a Tina Cox filed a national class action suit against Shell and HCC in a Tennessee state court ("Tennessee Group") on June 3, 1995, which raised substantially the same issues involved in the two Florida proceedings.[2] Unlike the Florida actions, the Tennessee Group's action was certified by the court as a class action on the very same day that the suit was filed, without objection from either Shell or HCC. The class, as certified by the Tennessee court, would have encompassed both the proposed classes in the Miami and Ocala actions.[3] *1005 Shortly thereafter, the Tennessee Group settled its claims with Shell and HCC. The settlement was initially approved by a Tennessee court in a judgment dated November 17, 1995. The Tennessee court then set October 20, 1995 as the deadline for any persons or entities subject to the Tennessee class action to opt out of the certified class. Pursuant to this order, Joan Norwood, a member of the Viera Group filed a motion with the Tennessee court to exclude all Florida residents from the Tennessee class as certified. That motion, however, was denied by the Tennessee court on October 19, 1995 on the grounds that Ms. Norwood lacked standing to exclude anyone other than herself from the class.[4] On the very next day, the Fry Group specially appeared before the Tennessee court to file their notice to opt out of the certified class.

III
Meanwhile, while the Tennessee Group's national class action was being resolved through settlement, Shell and HCC successfully moved to stay or abate the Fry Group's Ocala action pending a determination of the class certification issue in the Viera Group's Dade action.[5] By order dated September 26, 1995, the Ocala court stayed all of its proceedings until January 1, 1996 pending a determination of the class certification in the Viera Group's Dade action.[6]
After the Ocala action was stayed, the Fry Group moved to intervene in the Dade action below pursuant to Rule 1.230, Fla.R.Civ.P. The Fry Group's motion for intervention was granted over objection on November 28, 1995. Significantly, the order granting the intervention did not confer party status on the Fry Group members so as to permit them to file any pleadings for affirmative relief against Shell and HCC in the cause below.[7] In apparent recognition of this fact, the intervening Fry Group members subsequently filed a motion for the Dade court below to recognize them as additional plaintiff representatives and to terminate their subordinate status as mere intervenors pursuant to Fla.R.Civ.P. 1.230. The record before us, however, is totally devoid of any hearing being conducted on this motion or any order or stipulation being entered pursuant to this motion. In fact, there is no record evidence before us of any order permitting the Fry Group intervenors to file any pleading for affirmative relief against the appellants.
On Friday, December 29, 1995, at approximately 5:00 P.M. and prior to any class certification determination in the action below, the Viera Group members settled all of their claims with the appellants and voluntarily dismissed the action below. On the following Tuesday, January 2, 1996, counsel for the Fry Group filed an amended complaint in the action below naming themselves and the previously dismissed Viera Group members as party plaintiffs. Although the Fry Group asserts on appeal that this was done pursuant *1006 to a court order, we have not found any such order in our exhaustive review of the voluminous record before us.[8] In response, Shell and HCC each filed separate motions for the court below to vacate its order granting intervenor status to the Fry Group. Essentially, they argued that the reasons in support of the Fry Group's initial intervention into the proceedings below no longer existed by virtue of the Viera settlement and subsequent voluntary dismissal. The court agreed and granted the appellant's respective motions and sent the parties back to Ocala. The Fry Group did, however, timely move for the court's reconsideration of this order.

IV
When the parties returned to the Ocala court, Shell and HCC moved to dismiss the action with prejudice based upon their arguments that the Fry Group was subject to the Tennessee class action settlement and that the judgement approving this settlement was entitled to be granted full, faith and credit by the Ocala court. The Ocala court apparently agreed that the Fry Group had not effectively opted out of the Tennessee action and entered an order dated January 29, 1996 granting the motion to dismiss. A final order of dismissal on this motion, however, was not entered by the Ocala court until August 22, 1996. That final order was ultimately appealed to the Fifth District Court of Appeal.

V
After the Ocala court granted the motion to dismiss but before the entry of its final order, the parties reappeared before the Dade court on the Fry Group's motion for reconsideration of the order vacating their intervention in the action below. During the course of this hearing, appellants informed the court that the Ocala court had granted their motion to dismiss with prejudice based upon its determination that the Tennessee judgment was entitled to be given full, faith and credit. When the Dade court below raised the issue of whether the Ocala order might then have a res judicata effect on the matter pending before it, the appellees pointed out to the court that the Ocala order was not yet a final judgment hence, it could not have a preclusive effect at that point.[9] At that point, the Fry Group's motion for reconsideration was granted to allow them back into Dade County to proceed with a class certification hearing pursuant to their amended complaint filed four days after the Viera Group's voluntary dismissal of the action below.
Thereafter, the Fry Group proceeded with the class certification hearing. At the conclusion of the hearing, the court certified the proposed Fry Group's class pursuant to Rule 1.220, Fla.R.Civ.P. It is from this order granting class certification that this appeal has been taken.

VI
Shell and HCC have challenged the class certification order on numerous grounds on this appeal. We note, however, that neither of these appellants has questioned the trial court's subject matter jurisdiction to entertain the class certification hearing in the first instance. Their failure to *1007 raise this issue below does not preclude us, however, from addressing it for the first time on appeal where a jurisdictional infirmity appears on the face of the record before us. See 84 Lumber Co. v. Cooper, 656 So.2d 1297, 1298 (Fla. 2d DCA 1994), see also City of Miami v. Cosgrove, 516 So.2d 1125, 1128 (Fla. 3d DCA 1987); Van Dusen v. Southeast First Nat'l Bank, 478 So.2d 82, 86 n. 6 (Fla. 3d DCA 1985); Stel-Den of America, Inc., v. Roof Structures, Inc., 438 So.2d 882, 884 (Fla. 4th DCA 1983), review denied, 450 So.2d 488 (Fla.1984); In Re Paton's Estate, 173 So.2d 168, 169 (Fla. 2d DCA 1965); Hadley v. Hadley, 140 So.2d 326, 327 (Fla. 3d DCA 1962). That is because "[s]ubject matter jurisdiction cannot be created by waiver, acquiescence or agreement of the parties, or by error or inadvertence of the parties or their counsel, or by the exercise of power by the court; it is a power that arises solely by virtue of law." 84 Lumber Co., 656 So.2d at 1298.

VII
On the assumed premise that both the Ocala and Dade circuit courts had concurrent jurisdiction over the Fry Group's action against the appellants, the historical law of Florida has been that the power to entertain the action attaches exclusively to that court which first exercised jurisdiction over the matter. Benedict v. Foster, 300 So.2d 8, 10 (Fla.1974); Royal Globe Ins. Co. v. Gehl, 358 So.2d 228, 229 (Fla. 3d DCA 1978); Hogan v. Millican, 209 So.2d 716, 718 (Fla. 1st DCA 1968); Hunt v. Ganaway, 180 So.2d 495, 496-97 (Fla. 1st DCA 1965), cert. denied, 188 So.2d 806 (Fla.1966); Blake v. Blake, 172 So.2d 9, 10 (Fla. 3d DCA), cert. denied, 177 So.2d 480 (Fla.1965). The supreme court has construed this to mean that jurisdiction lies in that circuit where service of process was first perfected. Mabie v. Garden St. Management Corp., 397 So.2d 920, 921 (Fla.1981); Fasco Indus., Inc. v. Goble, 678 So.2d 916, 917 (Fla. 5th DCA 1996); Al Packer, Inc. v. First Union Nat'l Bank, 650 So.2d 165, 166 (Fla. 3d DCA 1995); Centex-Rodgers Constr. Co. v. Hensel Phelps Constr. Co., 591 So.2d 1117, 1118 (Fla. 1st DCA 1992); Towers Constr. Co. of Panama City, Inc. v. Key West Polo Club Apartments, Ltd., 569 So.2d 830, 831 (Fla. 5th DCA 1990).
The question then becomes whether the Dade or Ocala circuit court first exercised jurisdiction over the Fry Group's action against the appellants. Clearly, service of process was first effectuated against the appellants in the Dade action below by the Viera Group. None of the individual members of the Fry Group, however, were party plaintiffs to this action when it was instituted. The Fry Group members, of course, were potential party plaintiffs to the action below, if the Viera Group's proposed class had ever been certified, but this never occurred. Hence, we do not believe that it can properly be asserted that the Dade circuit court first exercised jurisdiction over the Fry Group's action against the appellants. Indeed, we must conclude that it was the Ocala circuit court which first exercised jurisdiction over the Fry Group's action against the appellants. Moreover, once the Fry Group submitted themselves to the Ocala court and had process effectuated over the appellants the general rule is that these parties were in full legal contemplation before that court to the exclusion of any other court until the final disposition of their cause there. See Taylor v. Cooper, 60 So.2d 534, 536 (Fla.1952); Martinez v. Martinez, 153 Fla. 753, 15 So.2d 842, 844-45 (1943); Maddox Grocery Co. v. Hay, 87 Fla. 492, 494, 100 So. 747, 747 (1924); Florida Ins. Guar. Assoc., Inc. v. Celotex Corp., 547 So.2d 660, 661 (Fla. 2d DCA), review denied, 554 So.2d 1167 (1989); Royal Globe, 358 So.2d at 229; Coon v. Abner, 246 So.2d 627, 628 (Fla. 4th DCA 1971); see also Haley v. Edwards, 233 So.2d 647, 649 (Fla. 4th DCA 1970); Blake, 172 So.2d at 10.
In Coon, the Fourth District was confronted with a somewhat analogous situation to that which is before us. The plaintiffs in that case had filed an action in Dade County seeking the cancellation of a promissory note and mortgage. The suit was dismissed for improper venue. After the dismissal, the plaintiffs filed a similar action against the defendants in Orange County and sought a temporary injunction. Prior to the hearing on the application for temporary injunction in Orange County, the plaintiffs appealed the *1008 dismissal of the Dade action to the Third District Court of Appeal. When the parties thereafter appeared before the Orange County court on the motion for temporary injunction, the trial court denied the same, finding that although it had concurrent jurisdiction with the Dade court, it lacked jurisdiction to entertain the motion because of the Dade appeal.
In affirming the Orange County court's denial of the motion, the Fourth District held that the tribunal which first acquired jurisdiction over the cause should be permitted to retain it to the exclusion of another tribunal until the termination of the cause. 246 So.2d at 628. The court found that the Dade trial court's original jurisdiction had been transferred to the Third District Court of Appeal, thereby precluding further proceedings in Orange County. Id. The court concluded this decision with its insightful observation that any other result would result in utter chaos in the disposition of litigation. Id. at 628-29.
The failure on the part of the Dade court below to yield exclusive jurisdiction in this case to the Ocala court and/or Fifth District Court of Appeal has created precisely the type of chaotic situation envisioned by the Coon court. Here, we have a case where an Ocala circuit judge has effectively told the Fry Group (whether correctly or incorrectly), that they may not pursue their claims against the appellants because these claims have been resolved in the Tennessee class action settlement.[10] On the other hand, we have a Dade circuit judge who has not only permitted the Fry Group to pursue these very same claims against the appellants in the case below, but has permitted them to do so as representatives of a class action. The purpose of the rule vesting exclusive jurisdiction in the first tribunal was to prevent precisely these types of inconsistent rulings. We therefore find that where exclusive jurisdiction was first exercised in the Ocala court, the Dade court lacked jurisdiction to entertain the class certification proceeding between these same parties in the action below.

VIII
Even in the absence of the pending Ocala action, we do not believe that the court below would have had jurisdiction to entertain the Fry Group's class certification motion made pursuant to the amended complaint. That is because the Fry Group members initially appeared in the action below solely as intervenors pursuant to Rule 1.230. That rule permits anyone claiming an interest in pending litigation to assert his or her right by intervention, but the rule specifically provides that "the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion." The order granting intervention to the Fry Group did not grant these individuals permission to assert claims for affirmative relief against Shell and HCC in the action below:
An order granting intervention should specify (1) the time within which the intervenor must plead or order the attached proposed pleading to stand as the intervenor's pleading; (2) the subsequent party designation of the intervenor; and (3) the intervenor's right to plead without being subordinate to the main action and his [or her] right to test the propriety of other parties' pleadings if the intervention is not subordinated.
See generally Trawick, Fla.Prac. and Proc. § 4-9 (1996).
It is clear from the record that the Fry Group's subsequent request to the court for elevation from their subordinate status to party plaintiffs was never acted upon prior to the dismissal of the action below. It is also clear that these intervenors had no pending independent claims for affirmative relief against Shell and HCC when the action below was voluntarily dismissed by the Viera party plaintiffs below. The net effect of the voluntary dismissal taken by the Viera party plaintiffs then was to completely divest the trial court of jurisdiction to act subsequent to the dismissal. See Miller v. Fortune Ins. Co., 484 So.2d 1221, 1223-24 (Fla.1986); *1009 Randle-Eastern Ambulance Serv., Inc. v. Vasta, 360 So.2d 68, 68-69 (Fla.1978); 84 Lumber Co., 656 So.2d at 1298-99; Coined v. Greenfield, 547 So.2d 224, 225 (Fla. 3d DCA 1989). Thus, where the Fry Group members were still subordinated intervenors with no pending independent claims against Shell and HCC at the time of the dismissal, we find that the trial court completely lost jurisdiction to entertain any claims attempted to be asserted by them after the dismissal. See 84 Lumber Co., 656 So.2d at 1298-99; Colucci, 547 So.2d at 225; Cf. Weiss v. Courshon, 618 So.2d 255, 257-58 (Fla. 3d DCA 1993) (finding where intervenors sought affirmative relief prior to dismissal of main party's claims, trial court's dismissal of entire action was error).
Accordingly, the class certification order must be vacated and this cause dismissed. We would add also that the trial court's order granting class certification, rendered without jurisdiction, is not entitled to the preclusive effect of res judicata in any future proceedings between these parties. 84 Lumber Co., 656 So.2d at 1299, (citing Florida Nat'l Bank of Jacksonville v. Kassewitz, 156 Fla. 761, 25 So.2d 271 (1945)) (on rehearing).
Order vacated; cause dismissed.
NOTES
[1] Viera v. Hoechst Celanese Corp., Case No. 95-6414 CA 11.
[2] Cox v. Shell Oil Co., Civil Action No. 18,844.
[3] The settlement class as certified by the Tennessee court included:

All persons and entities that (1) own real property or structures in the United States in which there was installed between January 1, 1978 and July 31, 1995, polybutylene plumbing with acetal insert or metal insert fittings or a polybutylene yard service line; (2) own or previously owned such real property or structures and have already incurred any cost or expense, by reason of leakage from, or from failure, repair or removal of, all or any portion of such polybutylene plumbing or yard service line which was installed between January 1, 1978 and July 31, 1995; or (3) will own such real property or structures during the term of entitlement to relief under the Settlement Agreement.
[4] The court found that the decision to be excluded from a class is individual in nature which could not be made or maintained by a class representative or class counsel. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810-13, 105 S.Ct. 2965, 2973-75, 86 L.Ed.2d 628, 640-43 (1985).
[5] Unlike the Tennessee action, Shell and HCC were vigorously contesting class certification of both Florida actions.
[6] According to the order, if the Viera court certified their proposed class prior to January 1, 1996, the stay would remain in effect beyond January 1, 1996 pending further order of court. If, however, the Viera's proposed class was not certified prior to January 1, 1996, the stay would be lifted.
[7] The order granting intervention read as follows:

THIS CAUSE having come on for hearing November 28, 1995 at 2:00 P.M., on the Motion to Intervene of Robert Fry, Gerald Garske, Edwin Kasanders, Jr., Edwin Kasanders, III, Mill Dam Development Corporation, Ralph Rudolph and Johnnie Voorhees, and the Court having heard argument of counsel, reviewed the file and being otherwise fully advised in the premises, it is
ORDERED AND ADJUDGED that the Motion to Intervene in this cause is hereby GRANTED.
DONE AND ORDERED in chambers at Miami, Dade County, Florida, this 28 day of November, 1995.
 /s/
 Circuit Court Judge

[8] Indeed, unless the trial court below had advance notice of the settlement date and voluntary dismissal, we are curious as to how such an order could have been procured from the court between the filing of the voluntary dismissal of the action at 5:00 P.M. on a Friday and the filing of the amended complaint on the following Tuesday after a three day holiday weekend.
[9] Under the doctrine of res judicata, a final decree on a judgment bars a subsequent suit between the same parties based upon the same cause of action and is conclusive as to all matters germane thereto that were or could have been raised. See Albrecht v. State, 444 So.2d 8, 11-12 (Fla.1984); Hinchee v. Fisher, 93 So.2d 351, 353 (Fla.1957); ICC Chemical Corp. v. Freeman, 640 So.2d 92, 93 (Fla. 3d DCA 1994). Thus, the appellees were correct in their assertion that an order which merely dismissed the cause and did not enter judgment for Shell and HCC was nothing more than an interlocutory order which could not provide the basis for a claim of res judicata or collateral estoppel. See Donnell v. Industrial Fire and Casualty Co., 378 So.2d 1344, 1346 (Fla. 3d DCA 1980); see also Edwards v. Kings Point Housing Corp., 351 So.2d 1073, 1074 (Fla. 4th DCA 1977) (holding order granting summary judgment was not a final appealable order, therefore it could not be the basis for res judicata).
[10] We, of course, express no opinion on the ruling made by the Ocala court as this is a matter that is now appropriately pending before the Fifth District Court of Appeal.