ALTENBERND, Judge.
K.N.B., the legal father of N.Z.B. and M.T.B., challenges an order of the trial court giving custody of his children to M.C., their maternal grandmother. This order was entered in a dissolution proceeding following the death of the mother. The father filed an extraordinary writ in this court maintaining that the trial court lacked jurisdiction to enter such an order, and also filed a final appeal of the order because it appears to be the last order that the trial court can enter in this proceeding. We review this order as a final order and reverse.
The mother and father married in 1991. Their two children were born in 1992 and 1994, when the mother and father were still in college or postgraduate programs. The mother apparently suffered from bipolar disorder and experienced some difficulties with alcohol. During the marriage, the couple and their children maintained close contact with the wife’s mother, i.e., the children’s maternal grandmother. The couple separated in mid-1997.
Thereafter, before filing any dissolution action, the couple mediated the terms of them separation. Neither party was represented by counsel at that time. Although the maternal grandmother is a licensed attorney with marital law experience, there is no evidence that she played any role in mediating this initial agreement. The mediation agreement, which was executed in October 1997, provided the parties would share parental responsibility for the children, with the wife as primary residential parent. The agreement included typical provisions for child support from and visitation with the father.
After the separation, the mother and children went to live with the maternal grandmother. Thus, it is undisputed that the two children have lived in the maternal grandmother’s home since August 1997. Because of the mother’s depression and the events described in this opinion, the grandmother has effectively served as the surrogate mother for these children for over three years. The record suggests that she has been an excellent guardian for these children. Likewise, the record suggests that the father has been intimately involved with the children during this time, exercising liberal visitation with the children and meeting his child support obligations.
The mother, through counsel, finally filed a dissolution petition in May 1998. Little occurred in that proceeding over the next six months. In the fall of 1998, the mother’s battle with her condition worsened, and she suffered depression and instability. The grandmother retained an attorney who prepared a joint stipulation authorizing the grandmother to intervene in the dissolution action, to have the “same standing as the parents in evaluating what custody arrangements are in the best interests of the children.” This language tracks the language in section 61.13(7), Florida Statutes (1997). The grandmother attached to the stipulation a petition in which she requested the primary residential care of the children and shared parental responsibility with the parents, pursuant to section 61.18(7). The mother and father signed the stipulation, indicating *510 their agreement to the grandmother’s intervention and their acceptance of service of the grandmother’s petition. The father was still not represented by counsel. On December 14, 1998, the trial court entered an order accepting the stipulation, allowing the grandmother to intervene in the dissolution action, and ordering the parties to file any responsive pleading they desired to the grandmother’s petition.
On January 8, 1999, the grandmother’s attorney filed an “Addendum to Mediation Agreement” in the dissolution proceeding. This document, signed in December by the mother, the father, and the grandmother, amended the earlier mediation agreement and provided that all three people would have shared parental responsibility. They further .agreed that the grandmother would have “temporary and permanent primary residential care” of the children. No one asked the court in January to take any action on this amendment. Instead, the grandmother’s attorney motioned the trial court to set a nonjury trial on her petition. Trial was set for February 18, 1999.
Three days before the addendum to the agreement was filed in the circuit court, the First District held section 61.13(7) unconstitutional. See Richardson v. Richardson, 734 So.2d 1063 (Fla. 1st DCA 1999), aff'd, 766 So.2d 1036 (Fla.2000). Richardson was binding precedent upon the circuit court because no conflicting decision had been issued by this district or any other district. See Chapman v. Pinellas County, 423 So.2d 578 (Fla. 2d DCA 1982). It is unclear whether the lawyers or the trial judge were aware of the Richardson decision, but the case was not formally disclosed to either the trial court or the father.[1]
In late January, the mother’s condition took a major turn for the worse. She was hospitalized and ultimately died on February 3, 1999. During this hospitalization, on February 1 or 2, the grandmother’s attorney delivered to the trial judge an order approving the addendum to the mediation agreement along with a cover letter.[2] The letter did not discuss the unusual tripartite custody arrangement or the mother’s health, but stated that the “proposed order simply approves and ratifies the agreement between the parties.” The letter indicated that the order had been approved by an attorney, but the letter did not specify that this attorney represented the mother. Unaware that the father had not been provided notice of the proposed order and its submission to the court, the trial court signed the order on February 2, a day before the mother died.
On February 9, an attorney filed an appearance on behalf of the father. The father moved to dismiss the dissolution proceeding in light of the wife’s death and also moved to set aside the February 2 order. The trial court set the order aside on February 18, 1999, primarily on the ground that the husband had not received an opportunity to review the order prior to its entry.
Over the following months, the father and grandmother had many disputes arising out of the desire of each party to have custody of the children. The parties advanced diametrically opposing positions. The father maintained that the mother’s death divested the trial court of jurisdiction to take any action and that custody of the children remained with the father as the sole surviving natural parent. The grandmother maintained that the trial *511 judge retained jurisdiction despite the wife’s death because the grandmother had been allowed to intervene to seek custody. The grandmother argued that the trial court must enforce the stipulation giving her permanent custody unless the father proved that he signed it under duress, fraud, coercion, or misrepresentation.
In August, the trial court decided to “bifurcate” the proceeding and determine first the validity of the agreement.[3] In November 1999, the trial court conducted an evidentiary healing. Following the hearing, the trial court entered an order in December 1999 approving the addendum to the mediation agreement on the grounds that it had been “freely and voluntarily” entered into by the father. The order refused to dismiss the proceeding and affirmatively retained jurisdiction over the children until they reach the age of majority. As an order entered in a bifurcated proceeding, it is not entirely obvious that this order is the trial court’s final order, but by incorporating the terms of the agreement, nothing further remained for resolution in that court. To make matters more confusing, when the father moved for rehearing, the trial court denied the motion declaring that the order was neither final nor “binding” on the parties.
Despite the trial court’s assessment of its order, we conclude that the December order is binding on the parties and is a final, appealable order. For the purpose of this opinion, we assume, without deciding, that the trial court did retain jurisdiction over the custody dispute following the mother’s death given the order permitting the grandmother to intervene and petition for relief.[4] We conclude, however, that the trial court erred by enforcing the addendum to the mediation agreement.
The addendum executed in December 1998 was based on both legal and factual circumstances that changed dramatically prior to either the February 2, 1999, order or the December 1999 order. The statute upon which the grandmother based her claim had been declared unconstitutional. See Richardson, 734 So.2d 1063. The mother’s condition and her relationship with her children were no longer the overriding concerns of the parties. The mother’s death was clearly a major permanent, unexpected, and unintended change in circumstances that occurred pri- or to any order enforcing the addendum to the marital settlement agreement.
Even without these changes, the father’s right to make decisions regarding the care, custody, and management of his children’s lives is a fundamental liberty interest of constitutional dimensions. See Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Von Eiff v. Azicri, 720 So.2d 510, 513 (Fla. 1998). The father did not waive his parental rights in the addendum. Cf. Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (finding presumption against waiver of constitutional rights); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (same). Instead, he agreed to share his parental responsibilities with a person who possessed no parental rights in the absence of a court order. Despite the language in the addendum purporting to give “permanent” custody to the maternal grandmother, the father was free to withdraw his consent to this addendum and obtain custody of his children, particularly at a time when no valid court order had approved *512 this private agreement.[5] See Pape v. Pape, 444 So.2d 1058 (Fla. 1st DCA 1984) (en banc). See also Hernandez v. Thomas, 50 Fla. 522, 39 So. 641 (1905); Bordley v. Blake, 478 So.2d 510 (Fla. 1st DCA 1985). The trial court properly withdrew its order of February 2, 1999, because it had been entered without notice to the father. At no point thereafter did the court have the power to transfer custody of the children over the objection of the father, the children’s sole natural or legal guardian.[6] See In re Guardianship of D.A. McW., 460 So.2d 368 (Fla.1984); In re Guardianship of Wilkes, 501 So.2d 704 (Fla. 2d DCA 1987).
Thus, we conclude that, under these unusual facts, the trial court erred when it enforced this addendum over the father’s objection. Accordingly, we reverse the trial court’s order approving the mediation agreement and addendum. Because the grandmother’s intervention and petition were based upon a statute that has been declared unconstitutional, and because there has been no other final order entered in this cause, the death of the mother requires that the dissolution action be dismissed.
We are mindful that these children have already suffered a great loss in the death of their mother. Our order is likely to disrupt the stable home in which they have lived and have been loved for most of their lives. If there were ever a time that the father and the grandmother needed to muster all of their familial skills to work together for the best interests of these two children, today is that day. It is our job to enforce the law and to protect rights given to parents by the United States Constitution. It will be the job of the father and the grandmother to see that these children are loved and nurtured. Ours is the easier task.
Reversed and remanded for dismissal.
PATTERSON, C.J., and FULMER, J., Concur.

. Although Richardson v, Richardson, 734 So.2d 1063 (Fla. 1st DCA 1999), aff'd, 766 So.2d 1036 (Fla.2000), was the first case to declare section 61.13(7), Florida Statutes (1997), unconstitutional, prior decisions of the supreme court regarding the competing interests of grandparents and parents may have predicted this result. See Von Eiff v. Azicri, 720 So.2d 510 (Fla. 1998) (holding portion of grandparent visitation statute unconstitutional as violation of parent’s constitutional right to privacy); Beagle v. Beagle, 678 So.2d 1271 (Fla. 1996) (same).

. Counsel on appeal did not represent the grandmother in the trial court.

. Because the jurisdiction of the court and the enforceability of the agreement are interdependent and not mutually exclusive, it is not clear how this actually bifurcates the proceeding.

. We note that the trial court did more than allow the grandmother to intervene. The stipulation and order allowing intervention specifically authorized the grandmother to file a petition requesting affirmative relief, thus making her role that of a party. See Fla. R. Civ. P. 1.230; Hoechst Celanese Corp. v. Fry, 693 So.2d 1003 (Fla. 3d DCA 1997).

. Under these circumstances, the addendum can be likened to the temporary custody of minor children by an extended family member authorized by chapter 751, Florida Statutes (1997). This chapter permits a parent to terminate the order so long as the court finds the parent is a fit parent. See § 751.05(7).

. No one argues that the father is unfit or that he has abandoned, abused, or neglected his children. This is not a dependency proceeding.