784 So.2d 611 (2001)
Margaret Mary Desmond CRUPI, Appellant,
v.
James J. CRUPI, Appellee.
No. 5D00-1241.
District Court of Appeal of Florida, Fifth District.
May 18, 2001.
*612 Mark D. Shelnutt of Mark D. Shelnutt, P.A., Ocala, for Appellant.
Larry Collins, Ocala, for Appellee.
PLEUS, J.
Margaret Mary Desmond appeals an order which denied her motion to set aside a Mediated Settlement Agreement in a divorce action with her former husband. After denial of her motion, the Mediated Settlement Agreement was incorporated into the Final Judgment of Dissolution of Marriage.
This is a case in which the trial judge arrived at a correct result but for the wrong reasons. The judge based his decision on the rationale and factors enumerated in Casto v. Casto, 508 So.2d 330 (Fla.1987). The Supreme Court's opinion in Casto notes that there are essentially two separate grounds for invalidating preor post-nuptial agreements. The first deals with fraud, duress, coercion, misrepresentation or overreaching. The second is "unfairness," or as it is sometimes called, the "fair and reasonableness challenge." Unfairness involves an agreement which makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties. The trial court, in following Casto, found there was a presumption of concealment or a presumed lack of knowledge. It then found the presumption was overcome because Desmond was sufficiently aware of the marital assets and income of the parties. The problem with the rationale of the trial court is that Casto involved a post-nuptial agreement. The agreement in this case is a mediated settlement agreement concluded through the expertise of a trained and certified mediator and in the course of a contested dissolution proceeding. The inquiry on a motion to set aside an agreement reached through mediation is limited to whether there was fraud, misrepresentation in discovery, or coercion.
In Casto, the parties' post-nuptial agreement preceded by approximately one year the husband's first filing of a dissolution petition. Id. at 332. The Mediated Settlement Agreement entered into in the instant case, in contrast, was entered into in the middle of a contested proceeding pursuant to court-ordered mediation. It was not made simply with the possibility of a future dissolution taking place but during the course of the litigation, litigation in which both parties were represented by counsel and in which the usual rules of discovery apply. In such a context, we agree with the statement made by the Fourth District in Petracca v. Petracca, *613 706 So.2d 904, 912 (Fla. 4th DCA 1998) that "The Casto line of cases ... logically has no application when the challenging spouse has had the benefit of litigation discovery through independently chosen counsel to learn the full nature and extent of the finances of the other spouse."
Petracca involved a stipulated settlement agreement made in the course of what the court termed "overheated" and "fierce" divorce litigation. The Fourth District in Petracca held that the spouse challenging a litigation settlement agreement is limited to showing fraud, misrepresentation or coercion. Inquiry into the "unreasonableness" or "unfairness" of the settlement agreement to either party is not permitted. The same rule should apply regardless of whether the agreement is a stipulated settlement agreement, as in Petracca, or a mediated settlement agreement, as in this case. In fact, the reasons for such limitations are even more compelling in the case of a mediated settlement agreement.
Desmond's pleadings allege fraud, misrepresentation, coercion and undue influence. She also alleges the Agreement is "extremely unreasonable" regarding her interests. However, at the evidentiary hearing on her motion to set aside, which was entirely appropriate and necessary, the parties focused on the factors necessary to determine "fairness." Instead of limiting the issues to fraud, misrepresentation in discovery, or coercion, the court combined those grounds with the issue of reasonableness and stated:
The critical test in determining the validity of the agreement is whether there was fraud or overreaching on one side, or, assuming unreasonableness, whether the challenging spouse did not have adequate knowledge of marital property and income of the parties at the time the agreement was reached.
The trial court ultimately found "insufficient evidence of coercion, undue influence or duress committed by the husband sufficient to justify setting aside the Mediated Settlement Agreement." While this finding of insufficient evidence by the trial court is all that is necessary for an affirmance, we write further because an examination of the hearing transcript may prove helpful in similar cases.
At the evidentiary hearing, and in an apparent effort to show coercion, a friend of Desmond's, who was present during the mediation process, testified that Desmond was under the impression that she had to come to an agreement that day; that Desmond was not in her right mind; and that she was very upset and anxiety-ridden, despite having taken a Xanax pill in the morning and again at lunch. Desmond testified that because she had had a couple of bad anxiety attacks, her doctor had prescribed Xanax to her and that on the day of the mediation, she took three pills even though normally she testified one "pretty much put me to sleep." She admitted, however, on cross-examination, that she remembered signing the mediation agreement, specifically recalling "the pressure I felt to sign it." She went on to testify that nobody unduly influenced her on the day of the mediation, but she had "a clear feeling that I had no options but to end it that day;" she concluded her testimony by recalling further that a hurricane was expected to strike the next day.
The Mediated Settlement Agreement itself provides "that each party has read this Agreement and neither party was subject to fraud or duress prior to or during the execution of this Agreement." The trial court specifically found that no representation was made to Desmond that it was necessary for her to execute the Mediated Settlement Agreement.
*614 We agree with the trial court's finding that three Xanax pills, and anxiety and pressure to settle are insufficient proof of coercion necessary to set aside such an agreement. Otherwise, few, if any, mediated settlement agreements would be enforceable.
On the issues of fraud and misrepresentation in discovery, Desmond contended the husband had intentionally misrepresented the assets and debts in his financial affidavit. Under examination, the husband, in fact, confirmed the inaccuracies and inconsistencies in both his financial affidavit and in a document prepared by his accountant. The trial court, however, noted the wife's financial affidavit also contained inaccuracies and inconsistencies, and then made a finding that the wife had her own separate opinions and understandings of the nature and appropriate value of what she considered to be both marital and non-marital assets. The trial court concluded with a specific finding that Desmond knew about the inaccuracies and inconsistencies in the affidavit of her husband but signed the Mediated Settlement Agreement anyway.
The trial court was correct in its conclusion that the evidence of fraud or misrepresentation in discovery was insufficient. We affirm the trial court's denial of the motion to set aside the mediated settlement agreement.
AFFIRMED.
PETERSON, J., concur.
SHARP, W., J., concurs in part and dissents in part, with opinion.
SHARP, W., J., concurring in part, and dissenting in part.
I agree that the evidence of fraud or misrepresentation in the mediation or discovery process, in this case, was not sufficiently established by Margaret Crupi, the former wife. And, I also conclude after reviewing the transcript, that she had sufficient knowledge concerning the marital assets and their values, to bind her to the agreement.[1] Thus I concur that the trial court's denial of the motion to set aside the mediated settlement agreement should be affirmed. However, I disagree that a spouse challenging a mediated settlement agreement should be limited to a showing of fraud, misrepresentation, or coercion.
In Casto v. Casto, 508 So.2d 330 (Fla. 1987), the Florida Supreme Court set out the two separate grounds on which a trial judge may vacate or modify a post-nuptial agreement in a dissolution proceeding. First, the spouse may establish that the agreement was reached under fraud, deceit, duress, coercion, misrepresentation or overreaching.
The second ground contains multiple elements. Initially the challenging spouse must establish that the agreement makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties. To establish that an agreement is unreasonable, the spouse must present evidence of the parties' relative situations, including their ages, health, education and financial status. With this information, the judge may determine that the agreement on its face does not adequately provide for the challenging spouse and consequently it is unreasonable. In making this determination, the judge must find that the agreement is disproportionate to the means of the defending spouse.
Once the spouse establishes that the agreement is unreasonable, a presumption arises that there was either concealment *615 by the defending spouse or a presumed lack of knowledge by the challenging spouse of the finances at the time the agreement was reached. The burden then shifts to the defending spouse who may rebut these presumptions by showing that there was either 1) a full, frank disclosure to the challenging spouse before the signing of the agreement relative to the value of all marital property and the income of the parties or 2) a general and approximate knowledge by the challenging spouse of the character and extent of the marital property sufficient to obtain a value by reasonable means, as well as a general knowledge of the income of the parties. The test in this regard is the adequacy of the challenging spouse's knowledge at the time of the agreement and whether the challenging spouse is prejudiced by the lack of information.
The court stressed that simply because one party to the agreement apparently made a bad bargain by itself is not a sufficient ground to vacate or modify a settlement agreement. The critical test in determining the validity of marital agreements is whether there was fraud or overreaching on one side or, assuming unreasonableness, whether the challenging spouse did not have adequate knowledge of the marital property and income of the parties at the time the agreement was reached. A bad fiscal bargain that appears unreasonable can be knowledgeably entered into for reasons other than insufficient knowledge of assets and income. There may be a desire to leave the marriage for reasons unrelated to the parties' financial condition. If an agreement that is unreasonable is freely entered into, it is enforceable. Courts, however, must recognize that parties to a marriage are not dealing at arms length and consequently judges must carefully examine the circumstances to determine the validity of these agreements.
In Petracca v. Petracca, 706 So.2d 904 (Fla. 4th DCA 1998), the fourth district held that Castro's second ground for invalidating or modifying a marital settlement agreementthat the agreement is unfair or unreasonabledoes not apply to agreements settling dissolution litigation. The court reasoned that the Castro second ground is based on the lack of knowledge of the challenging spouse and should be restricted to those circumstances in which the adequacy of knowledge might be plausibly raised. The court concluded, as does the majority in this case, that the adequacy of knowledge can be plausibly raised only when the agreement was reached by marital parties under conditions of mutual trust and confidence, who were not dealing at arms length. When the parties are involved in full fledged litigation over marital property and support rights, they are necessarily dealing at arms length and without the special fiduciary relationship of unestranged marital parties. Once the challenging spouse has the benefit of litigation discovery through independently chosen counsel to learn the full nature and extent of the finances of the other spouse, the second ground in Casto has no application-the very purpose of litigation discovery is to unearth the other parties' assets and income.
In such circumstances, the fourth district held that a spouse is limited to the first ground in Casto:
In order to avoid an agreement settling a dissolution of marriage action in which the parties were adversaries, to be consistent with Casto and the common law, the challenging spouse is similarly limited to showing fraud, misrepresentation in the discovery, or coercion. The supreme court's cases preclude judicial inquiry into the reasonableness of a litigation settlement to either party. The *616 parties alone are competent to say what is reasonable to resolve a lawsuit and what is not. If parties choose to settle a case without fraud or coercion after adequate opportunity to engage in discovery from which ample knowledge must be presumedthey should not be heard to assail the relative fairness of the bargain. If they agreed to the terms, it is presumptively and conclusively fair as a matter of law.
706 So.2d at 912.
I disagree with that analysis. Indeed, it appears contrary to Walter v. Walter, 464 So.2d 538 (Fla.1985), quashing Walter v. Walter, 442 So.2d 257 (Fla. 5th DCA 1983), in which the Florida Supreme Court cautioned appeals courts against establishing new rules of law which restrict the discretionary authority of trial judges to render equitable property dispositions or support and alimony awards.
Petracca distinguishes Casto as involving a property settlement whereas the Petraccas entered into a litigation settlement agreement. See 706 So.2d 909, fn. 5. Petracca states that the law properly presumes that a litigation settlement made after discovery just before trial was done with full knowledge by the challenging spouse. Petracca thus treats settlements of dissolution matters the same as settlements of other civil matters.
However, marital property settlement agreements are not treated the same as other contracts. In Posner v. Posner, 233 So.2d 381 (Fla.1970), the Florida Supreme Court addressed the validity of antenuptial agreements in divorces. The court noted "at the outset we must recognize that there is a vast difference between a contract made in the marketplace and one relating to the institution of marriage." 233 So.2d at 382. The court held that antenuptial agreements could be upheld if the agreement makes a fair and reasonable provision for the less financially secure party or if the less secure party entered into it with an understanding of the rights being waived. Such an understanding can be assumed if the less secure party had knowledge of the assets of the wealthier party. Nonetheless, any agreement of the parties was deemed to be limited by judicial decisions and statutory laws (i.e., chapter 61)[2] that provide for future modifications.
But even if Petracca is good law, it should not control in this case. In Petracca, the parties entered into a settlement agreement after two years of extensive litigation. The case had been set for trial on five separate occasions. Presumably the parties by that time had obtained all the information they felt necessary to go to trial. In the present case, the Crupis entered into a settlement agreement through mediation, before the case was set for trial
Mediation may occur shortly after the petition is filed and before discovery is complete. For example, in Trowbridge v. Trowbridge, 674 So.2d 928 (Fla. 4th DCA 1996), the wife filed a petition for dissolution on March 3rd and participated in mediation (which resulted in the settlement agreement) just three weeks later. And, Florida Family Rule 12.741(a) specifically provides that unless stipulated by the parties or ordered by the court, the mediation process shall not suspend discovery. Because discovery may not complete by the *617 time a mediated settlement agreement is reached, and it apparently was not in this case,[3] I respectfully disagree that Petracca is relevant or applicable to this case.
NOTES
[1] As the trial judge noted, most of the failure to disclose on the part of Mr. Crupi dealt with matters that would have reduced the value of the assets.
[2] Section 61.14(1)(a) provides that when the parties enter into an agreement for payments for or instead of support, maintenance or alimony, whether in connection with a proceeding for dissolution or a voluntary property settlement or when the parties were ordered by the court to make payments and the circumstances or the financial ability of either party changes, the party may apply to modify the amount due.
[3] After the settlement was challenged, the trial judge felt it necessary to order an independent appraisal of the horse farm.