ALTENBERND, Acting Chief Judge.
T.M.M. (“Father”), the legal father of L.M. and T.M., appeals an unusual nonfi-nal order that requires him to continue to provide visitation with his children to his sister, the children’s paternal aunt, H.M.C. (“Aunt”). The order also requires that the children attend public school in the Aunt’s school district in Pinellas County, rather than in the school district where the children reside. The order reaffirms an earlier order that was entered in August 1998, shortly after the Aunt filed a petition for temporary custody of the minor children pursuant to chapter 751, Florida Statutes (1997). We address only the more recent order that continues this visitation and nonresident schooling, although we are inclined to believe that the trial court never had the power to enter the original order. We treat this appeal as a petition for writ of certiorari, and grant the petition.
The two children were born in 1988 and 1991 from a nonmarital relationship between the Father and the children’s mother.[1] Until about 1995, the children appar *1116 ently lived with their mother and father. In 1996, the Father and the two children moved in with the Aunt and the Father’s mother. Because the Father’s job necessitated extensive travel, he did not consistently live in the home.[2]
On March 27, 1996, at approximately the same time that the Father and children moved in with the Aunt, he signed a notarized “consent.” This document does not appear to have been prepared by an attorney and nothing suggests that the document was prepared with any knowledge of chapter 751. The consent states:
To Whom It May Concern: I [T.M.M.] have designated the following individuals to have Guardianship over my two children, [L.M.] and [T.M.] for an indefinite period of time. The Guardians to be named are my sister [H.M.C.] and my mother [B.H.M.].[3]
The Father claims that he signed this form because he was working away from home and would not always be available to fulfill his parental responsibilities, including enrolling the children in school and providing medical care.
In January 1998, the Father moved to Hillsborough County, where he now resides with his wife. The children allegedly spent weekends at his new home during the first months of 1998. In June 1998, the children began living with the Father in Hillsborough County and apparently have never returned to live in Pinellas County. The Father maintains that he revoked the consent, which was for an “indefinite time.” See State ex rel. Airston v. Bollinger, 88 Fla. 123, 101 So. 282 (1924) (agreement by parent to transfer custody of his child is contrary to public policy and revocable by parent); Hernandez v. Thomas, 50 Fla. 522, 39 So. 641 (1905) (same). The Aunt maintains that she gave custody of the children to the Father for a summer vacation, and he refused to return them at the end of summer. The Father enrolled the children in the Hillsborough County public school system on August 3, 1998.
A few days after the Father enrolled the children in school, the Aunt filed a petition for temporary custody of the minor children in Pinellas County pursuant to chapter 751, Florida Statutes (1997). The petition alleged that the minor children’s current address and residence was with the Aunt. The petition requested temporary custody “until the children reach the age of majority,” and attached the Father’s two-year-old “consent,” and a separate, more recent document signed by the mother.[4] The petition did not claim that either parent was unfit and relied exclusively upon the written consents as a basis for temporary custody.
Before the Father could file an answer, the Aunt scheduled an emergency hearing on her request for temporary custody. On August 20, 1998, a judge, who was not assigned to the case but was handling an emergency calendar, entered an order finding that a dispute over the children’s enrollment in school was an “emergency” requiring immediate resolution. This order mandated that the Father enroll the children in school in Pinellas County, where the Aunt resided and where they had attended school the prior year, as opposed to Hillsborough County, where the Father resided and desired to enroll them. The trial court found that the mi *1117 nor children had resided with the Aunt and paternal grandmother from March 1996 until June 1998, when the Father retrieved the children and refused to return them to the Aunt. The trial court did not make a temporary custody determination. However, the emergency order acknowledged a stipulation between the Father and Aunt that the children would have visitation with the Aunt. The trial court ruled that the order was “without prejudice to a full evidentiary hearing on all the issues.”
The Father objected to this order, and the trial court amended it slightly. The amended order, entered on September 22, 1998, contained the same provisions but clarified that until June 1998, when the Father refused to return the minor children, the minor children had been living with the Father, the Aunt, and the grandmother. The amended order again provided that the emergency relief was without prejudice to a full evidentiary hearing on all issues and added that “this matter is without prejudice to the father.”
As a result of these nonfinal orders, the children have presumably lived with the Father for the last three school years in Hillsborough County, but have commuted almost daily to Pinellas County for school. This court does not have a full record on appeal because this case was filed as a nonfinal appeal. It is clear, however, that the Father objected to the Aunt’s petition at the time of the hearing in August 1998. He formally objected to the petition and challenged the court’s jurisdiction in an answer and motion to dismiss filed in May 1999.
A chapter 751 proceeding is designed to allow a relative with custody or a relative with notarized consent to obtain a formal custody order. See § 751.02, Fla.Stat. (1999). If a parent objects to such a custody order, the relative must prove that the parent is “unfit” by clear and convincing evidence. See § 751.05(3), Glockson v. Manna, 711 So.2d 1332 (Fla. 2d DCA 1998). Given that the Pinellas County circuit court apparently determined in August 1998 that the children were living with their Father in Hillsborough County at the time the Aunt’s complaint was filed, and that he objected to the proceeding, we do not clearly understand the basis for the circuit court’s jurisdiction-or perhaps venue-over the children’s custody.[5] At a minimum, the petition for custody has failed to state a cause of action ever since the Father objected to it. The Aunt has not attempted to amend her petition, and nothing in this limited record suggests that the Aunt can plead that the Father is unfit as a parent. Nevertheless, the trial court has refused to dismiss the Aunt’s petition, and no final hearing has been scheduled.
In the fall of 2000, the Father filed motions seeking to dismiss the Aunt’s petition and to vacate the September 22, 1998, order that required him to provide the Aunt visitation and to continue the children’s enrollment in Pinellas County schools. The motions each argued that the temporary order and the continuation of these proceedings violated the Father’s fundamental liberty interest to the care, custody, and management of his children. After a hearing, the trial court denied both motions. The Father now seeks review of the order denying his motion to vacate the September 22,1998, temporary order.
We have considered the possibility of handling this appeal as an appeal of a nonfinal order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(c)(iii). This rule allows review of nonfinal orders *1118 that determine the right to immediate monetary relief or child custody in family law matters.” Cf. McGlamry v. McGlamry, 608 So.2d 553 (Fla. 4th DCA 1992) (reviewing temporary order terminating all visitation). We have also considered treating this appeal as a petition for writ of prohibition because the trial court’s jurisdictional power is questionable. Although it is arguable that either approach would provide us with appellate jurisdiction, we conclude that the best approach is to treat this appeal as a petition for writ of certio-rari. See Belair v. Drew, 770 So.2d 1164 (Fla.2000) (certiorari review of temporary order awarding visitation rights to grandmother).
The trial court’s order departs from the essential requirements of law, and the error cannot be adequately corrected by posttrial appeal. Belair, 770 So.2d 1164. The Father has a constitutional right to determine the care and upbringing of his child, and this right generally includes the right to control visitation with relatives and to select the schools his children attend. See Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998);[6] Beagle v. Beagle, 678 So.2d 1271 (Fla.1996). Assuming without deciding that a prejudgment visitation order can be entered in a disputed chapter 751 proceeding, it is clear that the temporary order in this case, entered by the judge handling the emergency hearing, was based on the Father’s agreement and stipulation. When the action was still pending on a defective pleading two years later, he was entitled to seek to withdraw his stipulation. Cf. K.N.B. v. M.C. (In the Interest of N.Z.B. & M.T.B.), 779 So.2d 508 (Fla. 2d DCA 2000) (holding that absent waiver of parental rights, father was free to withdraw consent to custody of his children with nonparent, particularly when no valid court order had approved private agreement).
The Aunt argues that the Father was barred from challenging the trial court’s September 22, 1998, order more than a year after it was rendered. We disagree. The original order was a temporary order, entered “without prejudice” and in contemplation of a further eviden-tiary hearing. The trial court was free to revisit this temporary order. Bettez v. City of Miami, 510 So.2d 1242 (Fla. 3d DCA 1987). The Father properly challenged the trial court’s authority to continue enforcing this order. Under the unusual facts of this case, he had a right to receive relief from the earlier order. Von Eiff, 720 So.2d 510; Beagle, 678 So.2d 1271.
We grant the petition for writ of certio-rari and quash the order dated November 27, 2000, which denied the motion to vacate the order of September 22, 1998. We remand this case to the trial court for further proceedings consistent herewith. Upon remand, the trial court shall allow the Aunt an opportunity to amend her petition but shall dismiss this case unless a pleading is filed stating a cause of action that is justiciable in Pinellas County.
FULMER, J., and CAMPBELL, MONTEREY (Senior) Judge, concur.

. The facts in this case are derived exclusively from the parties' verified pleadings, sworn motions, and affidavits. Although the parties have provided this information under oath, it has not been subjected to the rigors of trial, and the trial court has entered no judgment or order containing any extensive findings of fact.

. There is a factual dispute concerning when and how long the Father resided with the Aunt and the grandmother.

. B.H.M., the paternal grandmother, is not a party to this action.

.The mother has made no claim in this proceeding.

. We are also uncertain about the trial court's power to order the Pinellas County School Board to accept a nonresident student when the School Board was not a party to the action or otherwise on notice of this proceeding.

. We note that in August 1998 when the Father initially consented to visitation, the supreme court had not decided Von Eiff v. Azicri, 720 So.2d 510 (Fla. 1998).