PLEUS, J.
The underlying action began as a private dependency action under Chapter 39 of the Florida Statutes when the paternal grandmother filed a dependency petition against the parents. Pursuant to a mediation agreement, the parties agreed to dismiss the dependency action and obtain an order granting petition for temporary custody to the grandmother under Chapter 751. The mother appeals this order and argues that the trial court erred by awarding custody *950 without conducting a hearing to address her objections. We agree and reverse.
In August 2006, the grandmother filed a dependency petition against the mother and father. She alleged that the mother had physically abused the child and the father had engaged in domestic violence with the mother in the child’s presence. The lower court appointed the mother and father counsel based on their indigency.
In January 2007, a mediation agreement was filed with the court. The agreement provided that there would be a Chapter 751 kinship order establishing the grandmother as the temporary custodian of the child, with specified visitation for the parents. It also provided that the underlying dependency action would be dismissed. The father, who did not attend the mediation, later ratified the agreement.
On January 29, the lower court sent notice to the parties indicating it had received a letter from the mother. In it, the mother stated that she did not agree with the mediation and did not want to settle the case. She felt pressured into going to mediation because her attorney told her it would look good in front of the judge and she would get to keep custody of her child. She wanted to fire her attorney and hire a private attorney to regain custody.
On January 30, the grandmother filed a petition for temporary custody of minor child by extended family, which alleged that the mother and father had consented to the petition in the mediation agreement. Attached to the petition was a proposed order. On February 7, the lower court signed and entered the temporary custody order. The mother timely appealed.
The order on appeal was entered pursuant to the mediation agreement and Chapter 751. Chapter 751 sets forth a statutory procedure for extended family members to obtain temporary custody of a minor. Section 751.04, Florida Statutes, states that “reasonable notice and opportunity to be heard must be given to the parents” before the court can enter a temporary custody order pursuant to Chapter 751. Further, section 751.05 states in pertinent part:
(1) At the hearing on the petition for temporary custody, the court must hear the evidence concerning a minor child’s need for care by the petitioner, all other matters required to be set forth in the petition, and the objections or other testimony of the child’s parents, if present.
(2) Unless the minor child’s parents object, the court shall award the temporary custody of the child to the petitioner when it is in the best interest of the child to do so.
(3) If one of the minor child’s parents objects to the granting of temporary custody to the petitioner, the court shall grant the petition only upon a finding, by clear and convincing evidence, that the child’s parent or parents are unfit to provide the care and control of the child. In determining that a parent is unfit, the court must find that the parent has abused, abandoned, or neglected the child, as defined in chapter 39.
[[Image here]]
(6) At any time, either or both of the child’s parents may petition the court to modify or terminate the order granting temporary custody. The court shall terminate the order upon a finding that the parent is a fit parent, or by consent of the parties. The court may modify an order granting temporary custody if the parties consent or if modification is in the best interest of the child.
In Glockson v. Manna, 711 So.2d 1332 (Fla. 2d DCA 1998), the parents appealed an order granting temporary custody of their children to the children’s aunt pursuant to Chapter 751. The appellate court reversed, noting that because the father had objected to the order, the statute re *951 quired the lower court to find by clear and convincing evidence that the parent had abused, abandoned or neglected the children. Id. The order contained no such findings and the hearing transcript indicated that the parents were not given a full opportunity to be heard. Id. at 1332-33. The court concluded by stating:
Care should be taken by trial courts utilizing chapter 751 when entering custody orders over the objection of biological parents, or simply without their consent, to observe the fundamental procedural safeguards accorded biological parents in dependency proceedings, including, most critically, notice and an opportunity to be heard.
Id. at 1333.
Furthermore, this Court has noted that Chapter 751 is a codification of the common law rule of parental preference, which provides that “where the custody dispute is between the parents and a third person, the rights of the parents are paramount unless there is a showing that the parents are unfit or that, for some substantial reason, custody in either or both of the parents would be detrimental to the child’s welfare.” Hammond v. Howard, 828 So.2d 476, 478 (Fla. 5th DCA 2002) (quoting Daugharty v. Daugharty, 571 So.2d 85, 86 (Fla. 5th DCA 1990)).
In re N.Z.B., 779 So.2d 508 (Fla. 2d DCA 2000), is similar to the instant case and its reasoning is instructive. During the course of a divorce proceeding, the parents and the maternal grandmother entered into an agreement allowing the grandmother to have “temporary and permanent primary residential care” of the children. Just before the mother’s death, the grandmother’s attorney delivered to the court an order approving the agreement. Id. at 510. The father moved to set aside the order on the ground that he had not been provided notice of it. The grandmother argued that the agreement should be enforced unless the father could prove duress, fraud, coercion or misrepresentation. The trial court held an eviden-tiary hearing and found that the father freely and voluntarily entered into the agreement. Id. at 511.
The appellate court reversed for several reasons. Most relevant to the instant case, the court stated:
[T]he father’s right to make decisions regarding the care, custody, and management of his children’s lives is a fundamental liberty interest of constitutional dimensions. See Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Von Eiff v. Azicri, 720 So.2d 510, 513 (Fla.1998). The father did not waive his parental rights in the addendum. Cf. Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (finding presumption against waiver of constitutional rights); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (same). Instead, he agreed to share his parental responsibilities with a person who possessed no parental rights in the absence of a court order. Despite the language in the addendum purporting to give “permanent” custody to the maternal grandmother, the father was free to withdraw his consent to this addendum and obtain custody of his children, particularly at a time when no valid court order had approved this private agreement.FN5 See Pape v. Pape, 444 So.2d 1058 (Fla. 1st DCA 1984) (en banc). See also Hernandez v. Thomas, 50 Fla. 522, 39 So. 641 (1905); Bordley v. Blake, 478 So.2d 510 (Fla. 1st DCA 1985)....
*952 Id. at 511-12 (emphasis added).
Based on the above authorities, we conclude that the lower court erred in awarding temporary custody to the grandmother because: (1) the mother, by letter, withdrew her consent to temporary custody prior to the entry of an order approving the agreement, as was her right under the common law rule of parental preference; (2)the mother was not notified of the petition for temporary custody or the proposed order; (3) the court failed to conduct a hearing and give the mother an opportunity to be heard, as required by sections 751.05(4) and (5); and (4) the court failed to make findings required by section 751.05.
The grandmother argues that the mother’s letter failed to sufficiently allege that she was coerced into signing the mediation agreement. Instead, it only alleged that the mother felt pressured into attending the mediation, not into signing the agreement. This Court has held that the grounds for setting aside an agreement reached through mediation is limited to fraud, misrepresentation in discovery and coercion. Crupi v. Crupi, 784 So.2d 611 (Fla. 5th DCA 2001). However, as previously discussed in In re N.Z.B., this standard does not apply in the instant case. The standard applied in Crupi applies to agreements between parents. The agreement in the instant case was between the parents and a third party. Thus, the rule of parental preference applied. Hammond. This rule allowed the mother to withdraw her consent at any time prior to the court approving the agreement. In re N.Z.B.
Accordingly, we reverse the order granting petition for temporary custody and remand for further proceedings.[1]
REVERSED AND REMANDED.
LAWSON and EVANDER, JJ„ concur.

. Under these circumstances, the addendum can be likened to the temporary custody of minor children by an extended family member authorized by chapter 751, Florida Statutes (1997). This chapter permits a parent to terminate the order so long as the *952 court finds the parent is a fit parent. See § 751.05(7).

. Because of our reversal on other grounds, we need not reach the mother's additional argument that the mediation agreement was subject to attack on ineffective assistance grounds. However, we note that this argument lacks merit. Generally, a party to an agreement may not move to set it aside on the ground that he or she has received incompetent legal advice. Casto v. Casto, 508 So.2d 330 (Fla.1987); Tubbs v. Tubbs, 648 So.2d 817, 818 (Fla. 4th DCA 1995). Furthermore, in S.B. v. Department of Children & Families, 851 So.2d 689 (Fla.2003), the supreme court held that the right to collaterally challenge ineffective assistance of counsel in dependency proceedings is not automatic. It is limited to those cases in which the proceedings may result in the permanent termination of parental rights or when a parent may be charged with criminal child abuse. S.B., 851 So.2d at 693-94. In the instant case, the proceedings did not lead to termination of parental rights, nor was there any effort to bring criminal charges on the mother's alleged physical abuse. Accordingly, the mother did not have the right to collaterally challenge her counsel's effectiveness. The mother attempts to distinguish S.B. by arguing that she directly, not collaterally, challenged her lawyer's ineffectiveness, first in her letter, and then on direct appeal. This distinction lacks significance.